ANN WALSH BRADLEY, J.
f 47. {dissenting). The right to a jury trial is a bedrock principle upon which this state is founded. Article I, section 5 of the Wisconsin Constitution guarantees that the "right of trial by jury shall remain inviolate . . . but. . . may be waived by the parties in all cases in the manner prescribed by law. . . This case requires us to examine the prescribed manner by which a party may contractually waive this guaranteed right.
¶ 48. Specifically we address whether Taft and Carol Parsons ("the Parsons") waived the right to a jury trial when Taft Parsons signed several loan documents, including one that contained a provision waiving the right to a have a jury resolve any claims against the lending institution.
¶ 49. The majority concludes that the pre-litigation jury waiver provision in the contract between the Parsons and Associated Bank-Corp ("Associated") is enforceable. Majority op., ¶ 45. In reaching its conclusion, the majority opinion ignores both significant precedent and the facts of this case.
¶ 50. Following a clear United States Supreme Court directive, numerous federal circuits have determined that a party must voluntarily and knowingly agree to a jury waiver. Rather than examining the totality of the circumstances, the majority instead rests on an ipse dixit analysis—if the jury waiver clause states that the waiver is knowingly and voluntarily made, then it must be so.
¶ 51. The damaging effect of the majority's departure from this well-established rule is demonstrated by the egregious facts of this case, which the majority to a large extent also ignores. Indeed, the *541 facts here are so egregious that the court of appeals determined that the jury waiver clause was unenforceable because it "is both procedurally and substantively unconscionable."[1] Parsons v. Associated Banc-Corp, 2016 WI App 44, ¶ 39, 370 Wis. 2d 112, 881 N.W.2d 793.
¶ 52. According to the amended complaint, an affidavit, and the documents of record, the Parsons planned a townhouse development to refurbish their neighborhood, but their plans went awry during the course of dealing with the bank. Instead of a townhouse development they were faced with bankruptcy, foreclosure and loan repayment demands for work that was never done. The loan officer involved was convicted of bank fraud in federal court related to a different townhouse project, with remarkably similar facts to those presented here.
¶ 53. Among the many documents he presented for their signature was a promissory note that contained a jury waiver clause. The Parsons were not allowed any time to review the documents or consult with an attorney before signing them. The loan officer threatened them by stating that he would withdraw the construction loan if they did not promptly sign the documents. Faced with the option of losing it all or promptly signing the documents, Taft Parsons signed. In their complaint the Parsons allege multiple acts of fraud, extortion and threats that occurred under the bank's watch.
*542 ¶ 54. Additionally, Associated waited years to object after the Parsons demanded a jury trial in compliance with Wisconsin's civil procedure statutes. The majority pays no heed to this delay, however, concluding that Associated's motion to strike the Parsons' jury demand was timely. Majority op., ¶ 4.
¶ 55. Contrary to the majority, I conclude that Associated Bank has not met its burden of proving that the Parsons knowingly and voluntarily waived their right to trial by jury. I further determine that Associated's motion to strike the Parsons' jury demand was untimely. Accordingly, I respectfully dissent.
I
¶ 56. In the span of only three paragraphs, the majority opinion dispenses with the question of whether Associated must demonstrate that the Parsons knowingly and voluntarily waived their right to a jury trial. See majority op., ¶¶ 35-37. Ignoring relevant precedent including the numerous federal circuits that have addressed this issue, the majority determines that "Associated does not need to offer additional proof that the Parsons knowingly and voluntarily agreed to this waiver." Id., ¶ 37.
| 57. Relying instead on this court's decision in Rao v. WMA Securities, Inc., the majority asserts that "a party's 'waiver' of the Article I, Section 5 right of trial by jury need not be a 'waiver1 in the strictest sense of that word, that is, an 'intentional relinquishment of a known right.' " Majority op., ¶ 35 (quoting Rao, 2008 WI 73, ¶ 22, 310 Wis. 2d 623, 752 N.W.2d 220). Additionally, it contends that Associated need not demonstrate that the waiver was knowing and voluntary because the terms of the Parsons' contract with Associated are unambiguous. Majority op., ¶¶ 36-37.
*543 ¶ 58. Despite its proffered rationales, the majority opinion finds little support in the law. First, its reliance on Rao is misplaced. In Rao, this court concluded that the circuit court did not violate the defendant's right to a jury trial because the defendant waived its right to a jury in the manner prescribed by law set forth in Wis. Stat. §§ 804.12(2) (failure to make discovery; sanctions) and 806.02 (default judgment). 310 Wis. 2d 623, ¶ 5.
¶ 59. Taking language out of context, the majority quotes Rao for the proposition that a jury waiver need not be an intentional relinquishment of a known right. Majority op., ¶ 35 (quoting Rao, 310 Wis. 2d 623, ¶ 22). However, the majority ignores that Rao did not address contractual waiver of the right. Rather, the context in which Rao made this statement was in addressing the consequences of a party's failure to comply with statutory requirements. See Rao, 310 Wis. 2d 623, ¶ 22 (a party may waive the right to a trial by jury "by failing to assert the right timely (as when a party fails to demand a jury trial timely in accordance with § (Rule) 805.01) or by violating a law setting conditions on the party's exercise of the jury trial right (as when a party fails to pay the jury fee timely in accordance with Wis. Stat. § 814.61).").
¶ 60. Second, the majority superficially addresses the issue of a contractual waiver by citing the basic principle that where the terms of a contract are unambiguous, we presume the parties intent is reflected in those words. Majority op., ¶ 36 (quoting Tufail v. Midwest Hosp., LLC, 2013 WI 62, ¶ 26, 348 Wis. 2d 631, 833 N.W.2d 586). The majority reasons that "it is a familiar rule that those who sign written instruments are presumed to know their contents and their legal effect." Majority op., ¶ 36 (quoting Creasy *544 Corp. v. Dunning, 182 Wis. 388, 396, 196 N.W. 775 (1924). Accordingly, it concludes that because the words of the contract are unambiguous, "[b]y those words, both Associated and the Parsons waived any right to a jury trial." Majority op., ¶ 37.
¶ 61. Reliance on general principles regarding freedom of contract is insufficient when a contract waives a constitutional right. K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 756 (6th Cir. 1985). Indeed, none of the cases cited by the majority as support for its conclusion—that Associated need not offer additional proof of knowing and voluntary waiver—even addresses the waiver of a constitutional right.[2]
¶ 62. Third, in its fervor to genuflect at the altar of freedom of contract, the majority ignores the significant precedent that has addressed the means by which a party may contractually waive its right to a jury trial. As the United States Supreme Court explains, courts should "indulge every reasonable presumption" against waiver of a jury trial due to the right's fundamental nature. Aetna Ins. Co. v. Kennedy to Use of Bogash, 301 U.S. 389, 393 (1937) (citations omitted); see also D.H. Overmyer Co. Inc., of Ohio v. Frick Co., 405 U.S. 174, 186 (1972) ("[W]e do not presume acqui *545 escence in the loss of fundamental rights.") (citation omitted). Indeed, it has instructed that waivers be intentional. Brookhart v. Janis, 384 U.S. 1, 4 (1966); see also Bogash, 301 U.S. at 393; Ohio Bell Tel. Co. v. Public Utils. Comm'n of Ohio, 301 U.S. 292, 307 (1937); D.H. Overmyer, 405 U.S. at 187.
¶ 63. The United States Supreme Court has directed, "for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege." Brookhart, 384 U.S. at 4 (internal citation omitted). In accordance with this directive, numerous federal circuits that have considered this issue have concluded that a jury waiver clause can only be effective where a party agrees to the provision knowingly and voluntarily. See Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 222 (3d Cir. 2007) ("To be valid, a jury waiver must be made knowingly and voluntarily based on the facts of the case.") (citations omitted); Med. Air Tech. Corp. v. Marwan Inv., Inc., 303 F.3d 11, 19 (1st Cir. 2002) ("courts will not enforce the jury waiver unless it was entered into knowingly and voluntarily"); Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1563 (Fed. Cir. 1990) ("Waiver requires only that the party waiving such right do so 'voluntarily' and 'knowingly' based on the facts of the case."); Leasing Serv. Corp. v. Crane, 804 F.2d 828, 833 (4th Cir. 1986) ("Where waiver is claimed under a contract executed before litigation is contemplated, we agree with those courts that have held that the party seeking enforcement of the waiver must prove that consent was both voluntary and informed."); K.M.C., 757 F.2d at 756 ("Those cases in which the validity of a contractual wavier of jury trial has been in issue have overwhelmingly applied the knowing and voluntary standard."); *546 Nat'l Equip. Rental, Ltd. v. Hendrix, 565 F.2d 255, 258 (2d Cir. 1977) ("It is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally."). But see IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union, 512 F.3d 989, 992-94 (7th Cir. 2008) (declining to follow other federal circuits).
¶ 64. Additionally, the predominant federal rule comports with analogous Wisconsin case law, such as the contractual waiver-of-venue cases. Brunton v. Nuvell Credit Corp., 2010 WI 50, ¶ 34, 325 Wis. 2d 135, 785 N.W.2d 302 ("[T]he waiver of a fundamental constitutional right requires a knowing, intelligent, and voluntary waiver."). It is also in accord with the principle that the waiver of a constitutional right requires a voluntary act. Wendlandt v. Indus. Comm'n, 256 Wis. 62, 66, 39 N.W.2d 854 (1949).
f 65. Whether a waiver of a constitutional right was knowing and voluntary is a fact-specific inquiry that is "separate and distinct from the operation of rules of substantive contract law . . . ." K.M.C., 757 F.2d at 756. As the relevant case law instructs, this inquiry should focus on the totality of the circumstances. See, e.g., Med. Air Tech., 303 F.3d at 19 n.4.
¶ 66. This inquiry emphasizes the relative bargaining power of the parties, as well as other factors including the respective roles of the parties in determining the terms of the waiver, the amount of time the waiving party had to consider the waiver and whether the waiving party was represented by counsel. See Nat'l Equip. Rental, 565 F.2d at 258 (emphasizing the parties' inequality in bargaining power); Med Air *547 Tech., 303 F.3d at 19 n.4 (setting forth factors that have been considered as part of a totality of the circumstances analysis).
II
f 67. Although the question of whether a party knowingly and voluntarily waived the right to a jury is a fact-specific inquiry, the majority opinion asserts that "[i]n part because of the unusual posture of this case, the facts pertaining to this lawsuit are largely unimportant to the disposition of this appeal." Majority op., ¶ 5. The majority fails to explain how the procedural posture of this case is so unusual. This case is before the court because the Parsons appeal a non-final order of the circuit court granting Associated's motion to strike the Parsons' jury demand.
¶ 68. Based on this slight justification, the majority opinion neglects to set forth or analyze the facts of the case beyond a brief summary of the allegations in the Parsons' complaint. Because the majority fails to do so, I set forth the necessary facts that inform the totality of the circumstances analysis. Like the court of appeals, I consider the allegations in the complaint, the loan documents, and the Parsons' affidavit.[3]
¶ 69. The events that gave rise to this appeal began when the Parsons obtained a home equity loan *548 in the amount of $40,000 and a construction loan in the amount of $774,000 from State Financial Bank.[4] They obtained these loans because they wanted to convert deteriorating properties in their Milwaukee neighborhood, including their own home, into a townhouse project.
f 70. The loan documents were signed by Aaron Moeser, a bank employee who was later convicted in federal court for fraudulent activity stemming from a loan scandal involving a similar townhouse construction project. Before any work was done on the Parson's townhouse project, the Parsons were instructed to sign five additional loan documents consisting of thirty pages of pre-printed forms, one of which contained the jury waiver clause at issue here.
¶ 71. According to Taft Parsons' affidavit, his objections to the new loan documents were met with threats from Moeser to pull the construction loan. This would have left the Parsons with debt even when no construction had been completed. Taft received no explanation of any terms in the documents except oral instructions to insert a specific interest rate. The bank refused to allow him the time and opportunity to read the documents or consult an attorney.[5]
f 72. Additionally, the loan documents gave State Financial Bank and Wisconsin Title Closing & Credit Services the authority to approve the contractor's construction draw requests. State Financial Bank and the title company were also given sole responsibility for verifying that the contractor had performed the construction and other work on the project for which it requested payment. The documents also allowed pay *549 ments for services that were not authorized on the project budget and secured all of the debt, including the construction loan, with a mortgage on the Parsons' home.
¶ 73. After the loan documents were signed, multiple draws were approved over the Parsons' objections, despite the fact that no actual work had begun on the townhouse project. The Parsons later received a notice of tax levy against the contractor from the IRS, indicating that it owed over $300,000 in taxes. It ordered the townhouse project to pay the IRS any money the project was obligated to pay the contractor. The Parsons then discovered a number of unpaid judgments against the contractor and forwarded the IRS notice and their findings to Moeser.
¶ 74. Moeser ended the construction loan and stopped payments to the contractor. This left the Parsons with a debt for the loan proceeds that had already been paid. The Parsons were unable to pay and State Financial Bank commenced a foreclosure action against the Parsons' home. State Financial Bank was taken over by Associated Bank, which continued the foreclosure action. The Parsons filed for bankruptcy, but made payments to the bank on the home equity loan, which resulted in dismissal of the foreclosure action.
¶ 75. I proceed next to apply those facts to the law. As set forth above, the federal circuits addressing this issue emphasize the relative bargaining power of the parties in considering whether a party knowingly and voluntarily agreed to waive the right to a jury trial. This case is analogous to Nat'l Equip. Rental, in which the owner of a small construction company entered into a predatory loan agreement when he could not satisfy obligations on debt owed for construc *550 tion equipment. 565 F.2d at 256-57. The pre-printed loan documents contained a jury waiver clause, which the Second Circuit concluded was unenforceable. Id. at 258.
¶ 76. Examining the circumstances of the jury waiver, the Nat'l Equip. Rental court determined that "it is clear that Hendrix did not have any choice but to accept the NER contract as written if he was to get badly needed funds." Id. Thus, the Second Circuit concluded that "[t]his gross inequality in bargaining power suggests, too, that the asserted waiver was neither knowing nor intentional." Id.
¶ 77. Similarly, the facts in the record here demonstrate that the Parsons did not voluntarily assent to the jury waiver clause. The complaint and Taft Parsons' affidavit contain facts sufficient to show that the promissory note was presented to him as a "take-it-or-leave-it" deal. He was told to sign it immediately or risk having Moeser cancel the $774,000 construction loan. This would have left the Parsons with $40,000 in debt on the home equity loan, with no work having been completed on the townhouse project.
¶ 78. A number of other factors may be considered in a totality of circumstances analysis. Med Air Tech., 303 F.3d at 19 n.4. These include, but are not limited to the respective roles of the parties in determining the terms of the waiver, the amount of time the waiving party had to consider the waiver and whether the waiving party was represented by counsel. Id.
¶ 79. A number of factors that do not support a determination that a waiver was knowing and voluntary are present in this case. The Parsons had no role in determining the terms of the waiver, which was included among five pre-printed loan documents totaling nearly thirty pages. Additionally, Taft Parsons was *551 given no time to sign the waiver and was not permitted the opportunity to consult with counsel.
¶ 80. Finally, under this court's decision in Brun-ton, the party seeking to enforce the waiver of a constitutional right has the burden of showing that a person had actual knowledge he was waiving a constitutional right. 325 Wis. 2d 135, ¶ 36 ("Establishing that a party knew of the right at issue is essential to establishing waiver."). In this case, Associated Bank has presented no evidence rebutting the facts presented in Taft Parsons' affidavit. By failing to do so Associated has not met its burden of proof. See, e.g., Lane v. Sharp Packaging Sys., Inc., 2002 WI 28, ¶ 41, 251 Wis. 2d 68, 640 N.W.2d 788 (resolving discovery dispute on the basis of an uncontested affidavit); see also Schroeder v. Wacker, No. 2000AP83-FT, unpublished slip op., ¶ 17 (Wis. Ct. App. Apr. 26, 2000) (relying on an uncontested affidavit to prove damages).
¶ 81. Accordingly, I conclude that Associated Bank has not met its burden of proving that the pre-litigation jury waiver provision in the contract between the Parsons and Associated Bank was made knowingly and voluntarily.
I !—(
f 82. Finally, I turn to the majority's conclusion that Associated's motion to strike the Parsons' jury demand was timely. Majority op., ¶ 43.
¶ 83. Pursuant to Wis. Stat. § 805.01, a party may demand a trial in the mode to which it is entitled at or before the scheduling conference or pretrial conference, whichever is held first:
(1) Right Preserved. The right of trial by jury as declared in article I, section 5, of the constitution *552 or as given by a statute and the right of trial by the court shall be preserved to the parties inviolate.
(2) Demand. Any party entitled to a trial by jury or by the court may demand a trial in the mode to which entitled at or before the scheduling conference or pretrial conference, whichever is held first. The demand may be made either in writing or orally on the record.
(3) Waiver. The failure of a party to demand in accordance with sub. (2) a trial in the mode to which entitled constitutes a waiver of trial in such mode... .
f 84. The Parsons' complaint and amended complaint made a demand for a jury trial and the jury fee was timely paid. Associated filed multiple pleadings with no objection to the jury demand. However, three years into litigation, at the third pretrial conference, the bank raised an off-the-record objection to the Parsons' jury demand. It then filed a motion to strike the Parsons' jury demand, arguing that when Taft Parsons signed the promissory note with the waiver clause ten years earlier, the Parsons waived any right to a jury trial involving the bank.
¶ 85. Nevertheless, the majority reasons that Associated was not demanding a trial in the mode to which it was entitled. Majority op., ¶ 41. Instead, the majority contends that it was moving to strike the Parsons' jury demand because the Parsons were not themselves entitled to a jury trial. Id.
f 86. The majority further refuses to apply equitable estoppel because "having contracted away their right, any reliance that the Parsons might have had on Associated's initial acquiescence in their unfounded *553 demand for a jury trial was not reasonable." Majority op., ¶ 42. Thus, the majority concludes that "[b]ecause reasonable reliance is a requirement of equitable es-toppel, Associated is not equitably estopped from striking the Parsons' demand." Id. (citing Affordable Erecting, Inc. v. Neosho Trompler, Inc., 2006 WI 67, ¶ 33, 291 Wis. 2d 259, 715 N.W.2d 620.
¶ 87. Contrary to the majority, I conclude that even if the bank's objection were timely as the majority claims, the bank is equitably estopped from raising this objection three years into litigation. Equitable estoppel generally bars one party from taking a position upon which another party relies and then subsequently changing that position to the detriment of the relying party. See Affordable Erecting, 291 Wis. 2d 259, ¶ 33 ("There are four elements of equitable estop-pel: (1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment.") (citation omitted).
¶ 88. The bank's failure to challenge the Parsons' jury demand led the Parsons to spend three years preparing for a jury trial. A review of the record reveals numerous motions, hearings, and other activity demonstrating that the parties were moving toward trial.
¶ 89. It was reasonable for the Parsons to prepare for a jury trial because not only did they timely demand one, the bank actively participated in pre-trial litigation. As the court of appeals explained, participation by the bank without objection to the mode of trial "is both action (actually participating) and inaction (not objecting to the mode of trial) upon which the Parsons reasonably relied." Parsons, 2016 WI App 44, ¶ 23.
*554 ¶ 90. I agree with the court of appeals that changing the mode of trial three years into the case is detrimental to both the Parsons and to reasonable and efficient court administration. Thus, I conclude that even if the bank's objection were timely, it is equitably estopped from making its much belated claim for a court trial.
f 91. Contrary to the majority, I conclude that Associated Bank has not met its burden of proving that the Parsons knowingly and voluntarily waived their right to trial by jury. I further determine that Associated's motion to strike the Parsons' jury demand was untimely. Accordingly, I respectfully dissent.
f 92. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 "Unconscionability has often been described as the absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the other party." Wisconsin Auto Title Loans, Inc. v. Jones, 2006 WI 53, ¶ 32, 290 Wis. 2d 514, 714 N.W.2d 155.

 See Tufail v. Midwest Hosp., LLC, 2013 WI 62, ¶ 26, 348 Wis. 2d 631, 833 N.W.2d 586 (addressing a contract dispute between a landlord and a tenant over the terms of a commercial lease of property); Kernz v. J.L. French Corp., 2003 WI App 140, ¶ 9, 266 Wis. 2d 124, 667 N.W.2d 751 (employment contract dispute); Creasy Corp. v. Dunning, 182 Wis. 388, 396, 196 N.W. 775, 778 (1924) (action to recover payment for merchandise); Kruse v. Koelzer, 124 Wis. 536, 541, 102 N.W. 1072 (1905) (action brought to reform a warranty deed); Ash Park, LLC v. Alexander & Bishop, Ltd., 2015 WI 65, ¶ 38, 363 Wis. 2d 699, 866 N.W.2d 679 (action seeking specific performance of real estate purchase agreement).

 Additionally, the majority asserts that the court of appeals erred in considering the facts alleged in Taft Parsons affidavit, which is a part of the evidentiary record in this case. Majority op., ¶ 38. According to the majority, the circuit court was "unpersuaded" by the allegations in the affidavit and "[t]he record adequately supports the circuit court's determination .. . ." Id. However, because the majority fails to set forth the parts of the record it believes supports the circuit court's interpretation, it is the majority's reasoning here that is unpersuasive.

 Associated Bank acquired State Financial Bank in 2006.

 There is no evidence in the record contradicting the factual assertions made in the Parsons' affidavit.