# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2581 |
| COMPLETE TITLE: | Taft Parsons, Jr. and Carol Parsons, Plaintiffs-Appellants, v. Associated Banc-Corp, Defendant-Respondent-Petitioner, XYZ Insurance Company, Defendant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
2016 WI App 44
Reported at: 370 Wis. 2d 112, 881 N.W.2d 793

| | |
|---|---|
| OPINION FILED: | April 13, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 2, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Jeffrey A. Conen |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | A.W. BRADLEY, J. joined by ABRAHAMSON, J. dissents (opinion filed). |
| NOT PARTICIPATING: | KELLY, J. did not participate. |

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs by *Robert G. Pyzyk, James J. Carrig* and *Niebler, Pyzyk, Roth and Carrig, LLP*, Menomonee Falls. Oral argument by *James J. Carrig.*

For the plaintiffs-appellants, there was a brief by *Alex Flynn, Marjorie R. Maguire* and *Alex Flynn and Associates, S.C.*, Milwaukee. Oral argument by *Alex Flynn.*

An amicus curiae brief was filed by *Jonh E. Knight, Kirsten E. Spira* and *Boardman & Clark LLP*, Madison, for *Wisconsin Bankers Association*.

An amicus curiae brief was filed by *Michael J. Cerjak, PKSD,* Milwaukee, *Mark L. Thomsen* and *Cannon & Dunphy, S.C.,* Brookfield for *Wisconsin Association for Justice*.

**2017 WI 37**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP2581
(L.C. No. 2011CV8389)

STATE OF WISCONSIN       :       IN SUPREME COURT

**Taft Parsons, Jr. and Carol Parsons,**

      **Plaintiffs-Appellants,**

   **v.**

**Associated Banc-Corp,**

      **Defendant-Respondent-Petitioner,**

**XYZ Insurance Company,**

      **Defendant.**

**FILED**

**APR 13, 2017**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals, Parsons v. Associated Banc-Corp, 2016 WI App 44, 370 Wis. 2d 112, 881 N.W.2d 793, which reversed the Milwaukee County circuit court's[1] order granting Associated Banc-Corp's ("Associated") motion to strike Taft and Carol Parsons' ("the Parsons") demand for a jury.

---

[1] The Honorable Jeffrey A. Conen presided.

¶2   The Parsons are approaching a trial in their lawsuit against Associated for alleged racketeering activity and negligent hiring, training, and supervision.  We are asked to decide what form that trial will take.  The Parsons seek a jury trial, but Associated asserts that the Parsons contractually waived their right to a jury several years ago, before this litigation arose.

¶3   There are two basic issues on this appeal.  First, we must examine whether the pre-litigation jury waiver provision in the contract between the Parsons and Associated is enforceable, either with or without proof extrinsic to the terms of the contract that the Parsons knowingly and voluntarily agreed to this waiver.  Second, if we conclude that the provision is enforceable, we must examine whether Associated's motion to strike the Parsons' jury demand was untimely.

¶4   We conclude that the pre-litigation jury waiver provision in the contract between the Parsons and Associated is enforceable and that Associated does not need to offer additional proof that the Parsons knowingly and voluntarily agreed to this waiver.  We further conclude that Associated's motion to strike the Parsons' jury demand was not untimely. Consequently, we reverse the decision of the court of appeals and remand the case to the circuit court for further proceedings consistent with this opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

¶5   In part because of the unusual posture of this case, the facts pertaining to this lawsuit are largely unimportant to

the disposition of this appeal.  On May 26, 2011, the Parsons sued Associated in Milwaukee County circuit court asserting claims pertaining to, in the words of the Parsons, "a failed construction project in inner-city Milwaukee."

¶6  More specifically, the Parsons' complaint contains the following relevant allegations.  In or before 2002, Taft Parsons ("Taft") "conceived of the idea to turn the run-down houses on his block into modern affordable rowhouses."  The Parsons obtained financing for this project through State Financial Bank, Associated's predecessor in interest.[2]  According to the Parsons, however, Associated "conspired with, aided, and/or allowed the general contractor and project manager [of the project] to improperly take hundreds of thousands of dollars of construction funds from the [Parsons] causing the [Parsons] substantial injury."  The complaint asserted ten causes of action and, importantly, demanded a 12-person jury.

¶7  On December 12, 2012, the Parsons filed an amended complaint asserting eight causes of action.  Before this court, the Parsons contend that they have now "limited their case" to the following two claims presented in their amended complaint: (1) racketeering activity in violation of Wis. Stat. § 946.83(1)

---

[2] For simplicity, we will refer to both State Financial Bank and Associated as "Associated" for the remainder of this opinion.  We express no position on the merits of the underlying dispute.

(2013-14);[3] and (2) negligent hiring, training, and supervision. In their amended complaint the Parsons again demanded a 12-person jury. On January 9, 2013, the Parsons submitted the jury fee to the circuit court.

¶8 On May 14, 2014, Associated filed a motion to strike the Parsons' jury demand. Associated provided the circuit court with a Promissory Note for several hundred thousand dollars dated May 26, 2004 and listing Taft as "Borrower" and Associated as "Lender." The note contained the following relevant language:

> WAIVER OF JURY TRIAL. THE BORROWER AND THE LENDER (BY THEIR ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE BORROWER AND THE LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS DOCUMENT, ANY OTHER RELATED DOCUMENT, OR ANY RELATIONSHIP BETWEEN THE BORROWER AND THE LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT TO THE LENDER TO PROVIDE THE FINANCING DESCRIBED HEREIN OR IN OTHER LOAN DOCUMENTS.
>
> . . .
>
> PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE . . . . BORROWER AGREES TO THE TERMS OF THE NOTE.

(Boldface omitted from first four words and last paragraph.) A few lines below this text was Taft's signature. Accordingly,

---

[3] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

4

Associated asked the court to strike the Parsons' jury demand "because it was contractually waived."

¶9 The Parsons offered a number of arguments in response to the motion to strike; the following ones are relevant to this appeal. First, while conceding that "the statutes do not provide a deadline for an opposing party to object to a jury demand," the Parsons argued that Associated's motion to strike was untimely and that Associated had waived its right to object to the jury demand. Second, the Parsons claimed that because of the lack of Wisconsin case law regarding contractual jury waivers, the circuit court was not required to enforce the jury waiver provided by Associated. Third, the Parsons contended that Carol Parsons ("Carol") had not signed the Promissory Note and thus had not waived her right to a jury. Finally, the Parsons asserted that Taft "had no freedom not to sign the Promissory Note for the construction loan."

¶10 With regard to this final argument, the Parsons attached an affidavit in which Taft swore to the following, among other things: Taft "never noticed any jury waiver clause in the Promissory Note . . . because [he] was not given time to review the loan documents prior to the closing"; Taft "had no counsel" at the time he signed the Promissory Note; Taft was told "that if [he] did not sign the closing documents immediately, [Associated] would withdraw its support for the construction project"; if Taft "had not gotten the construction loan," tens of thousands of dollars he had already obtained under another loan "for pre-construction costs would have been

down the drain, and [he] would still have owed that money"; Taft "did not knowingly and freely waive any right to a jury trial"; and Taft signed the Promissory Note "under pressure."

¶11 On October 24, 2014, the circuit court granted Associated's motion to strike the Parsons' jury demand. Citing as "particularly relevant considerations" "the parties' sophistication, whether the contract was procured fraudulently, and whether the jury waiver clause is conspicuous," the circuit court concluded that the waiver was enforceable. The circuit court explained in part:

> [Taft] is an intelligent business man who undoubtedly has experience reviewing paperwork and entering into contracts; he surely knows the importance of thoroughly reviewing documents. . . . [T]he promissory note also contained multiple bold, capital letter acknowledgements above the signature line. The jury waiver clause is set off from the rest of the document by bold, capital letters, stating "WAIVER OF THE JURY TRIAL." [sic] It is unlikely that [Taft] overlooked the jury waiver clause as the promissory note itself is just a two-page document. Finally, Wisconsin courts presume that a party to a contract had knowledge of it and consented to its terms.

¶12 The circuit court rejected the Parsons' timeliness argument in part because the Parsons had not provided any law establishing that Associated's putative delay in objecting to the jury demand waived Associated's right to object to the demand. With regard to the Parsons' claim that Carol was not bound by the jury waiver, the court concluded:

> The argument made in the Parsons' brief . . . was superficial. Regardless, the jury waiver applies to "any dispute . . . between or among the Borrower and the Lender arising out of" the promissory note[,] any

6

> other related document, or "any relationship between the Borrower and the Lender." As [Carol]'s claims are ones arising out of the relationship between the borrower and the Bank, the waiver clause also applies to her.

The circuit court ordered that the Parsons' cause would be heard by court trial.

¶13 On November 25, 2014, the Parsons petitioned the court of appeals for leave to appeal a non-final order. On December 12, 2014, the court of appeals granted the petition. On May 20, 2016, in a published opinion, the court of appeals reversed the decision of the circuit court and remanded the case for a jury trial. Parsons, 370 Wis. 2d 112, ¶1.

¶14 The court of appeals began with the broad proposition that a person may waive his or her right to a jury trial under Article I, section 5 of the Wisconsin Constitution. Id., ¶16. However, the court of appeals concluded that Associated bore the burden of demonstrating that the Parsons "understood the scope of and the specific nature of the rights given up by the waiver." Id., ¶31. Relying on Taft's affidavit, the court determined that Associated had not met that burden and that the circuit court erred in concluding otherwise. See id., ¶¶29-31.

¶15 The court of appeals then explained that because "the additional question of whether the waiver clause is invalid because it is unconscionable may well arise during trial, as it did at oral argument, [it would] consider whether the clause, on the record before [it], survives an unconscionability analysis." Id., ¶32. The court of appeals concluded the waiver was procedurally and substantively unconscionable. Id., ¶39.

7

¶16 The court of appeals also considered whether the circuit court erred in allowing Associated to object to the Parsons' jury demand and concluded it had erred for three reasons. First, Associated had forfeited its right to object because its objection was not timely. Id., ¶22. Second, Associated had waived its right to object under Wis. Stat. § 805.01(3). Id. Third, Associated was "equitably estopped from making its much belated claim for a court trial." Id., ¶23. The court of appeals remanded the case for a jury trial. Id., ¶1.

¶17 On June 9, 2016, Associated filed a petition for review in this court. On September 13, 2016, we granted the petition.

## II. STANDARD OF REVIEW

¶18 In this case we interpret Article I, section 5 of the Wisconsin Constitution. We review state constitutional questions de novo. State v. Lagrone, 2016 WI 26, ¶18, 368 Wis. 2d 1, 878 N.W.2d 636 (quoting State v. Schaefer, 2008 WI 25, ¶17, 308 Wis. 2d 279, 746 N.W.2d 457).

¶19 We also interpret and apply Wis. Stat. § 805.01 ("Jury trial of right."). "'Statutory interpretation and application present questions of law that we review de novo while benefiting from the analyses of the court of appeals and circuit court.'" Journal Times v. Racine Bd. Police & Fire Comm'rs, 2015 WI 56, ¶42, 362 Wis. 2d 577, 866 N.W.2d 563 (quoting 118th St. Kenosha, LLC v. DOT, 2014 WI 125, ¶19, 359 Wis. 2d 30, 856 N.W.2d 486).

## III. ANALYSIS

¶20 We first address whether the pre-litigation jury waiver provision in the contract between the Parsons and Associated is enforceable. We then address whether Associated's motion to strike the Parsons' jury demand is untimely.

### A. Whether the Pre-litigation Jury Waiver Provision in the Contract between the Parsons and Associated is Enforceable

¶21 That a person may waive his or her right to a civil jury trial in Wisconsin is already settled law. Under Article I, section 5 of the Wisconsin Constitution:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof.

Wis. Const. art. I, § 5 (emphasis added).

¶22 The Wisconsin Statutes set forth a number of ways in which a civil jury trial may be waived. For example, under Wis. Stat. § 805.01(2), "Any party entitled to a trial by jury or by the court may demand a trial in the mode to which entitled at or before the scheduling conference or pretrial conference, whichever is held first. The demand may be made either in writing or orally on the record." § 805.01(2). However,

> [t]he failure of a party to demand in accordance with sub. (2) a trial in the mode to which entitled constitutes a waiver of trial in such mode. The right

9

> to trial by jury is also waived if the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury.

§ 805.01(3). Further, under Wis. Stat. § 814.61(4), "If the jury fee is not paid, no jury may be called in the action, and the action may be tried to the court without a jury." § 814.61(4). See generally Rao v. WMA Sec., Inc., 2008 WI 73, ¶¶19-20, 310 Wis. 2d 623, 752 N.W.2d 220 (discussing the same statutes); Phelps v. Physicians Ins. Co. of Wis., 2005 WI 85, ¶¶28-29, 282 Wis. 2d 69, 698 N.W.2d 643 (same). "Wisconsin Stat. §§ 805.01(3) and 814.61 are but two examples of how waiver may be effectuated." Phelps, 282 Wis. 2d 69, ¶28.

¶23 The central question in this case, therefore, is not whether a civil jury trial may be waived, but instead whether a pre-litigation jury waiver provision in a contract constitutes waiver "in the manner prescribed by law." Wis. Const. art. I, § 5.

¶24 We observe that the parties have not presented us with a statute governing contractual jury waivers. However, as we will now explain, that is not dispositive of the issue. It is true that in another context——interpretation of the "powers, duties and compensation" of the attorney general pursuant to Article VI, section 3 of the Wisconsin Constitution——this court has interpreted the word "law" in the phrase "prescribed by law" to mean statutory law. See, e.g., State v. City of Oak Creek, 2000 WI 9, ¶19, 232 Wis. 2d 612, 605 N.W.2d 526. And "[u]ndoubtedly, there is a natural presumption that identical

10

words used in different parts of the same act are intended to have the same meaning." Atl. Cleaners & Dyers v. United States, 286 U.S. 427, 433 (1932). Yet this presumption "is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." Id. Here, a number of considerations lead us to conclude that the phrase "prescribed by law" in Article I, section 5 of the Wisconsin Constitution is not restricted to statutory law.

¶25 As a preliminary matter, we note the obvious proposition that the phrase "prescribed by law" is susceptible to a broader definition than simply "prescribed by statute." The word "law" can denote "[t]he aggregate of legislation, judicial precedents, and accepted legal principles," not just legislation. Law, Black's Law Dictionary 1015 (10th ed. 2014). Likewise, to "prescribe" simply means "[t]o dictate, ordain, or direct; to establish authoritatively (as a rule or guideline)." Prescribe, id. at 1373.[4]

---

[4] The phrase "prescribed by law" appeared in the original version of Article I, section 5 of the Wisconsin Constitution adopted in 1848. Both "law" and "prescribe" carried similar definitions during that time period. One legal dictionary of the time defines "law" in part as follows:

(continued)

11

¶26 Next, we must acknowledge a second, related interpretative presumption, namely the intuitive presumption that "different words have different meanings." <u>Pawlowski v. Am. Family Mut. Ins. Co.</u>, 2009 WI 105, ¶22, 322 Wis. 2d 21, 777 N.W.2d 67 ("When the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings."); Antonin Scalia & Bryan A. Garner, <u>Reading Law</u> 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning."). While Article I, section 5 of the Wisconsin Constitution provides that "a jury trial may be waived by the parties in all cases in the

---

> [T]hat body or system of rules which the government of a country has established for its internal regulation, and for ascertaining and defining the rights and duties of the governed, . . . commonly called <u>municipal</u> or <u>civil</u> law, and, in popular language, "the law of the land." The municipal law of England is composed of written and unwritten laws (<u>lex scripta</u> and <u>lex non scripta</u>): or, in other words, of the statutes of the realm, and of the custom of the realm, otherwise termed the "common law[";] on both of which branches of the law the superior courts exercise their judgment, giving construction and effect to the former, and by their interpretation declaring what is, and what is not the latter.

Henry James Holthouse, <u>A New Law Dictionary</u> 245 (2d ed., Boston, Charles C. Little and James Brown, London, Thomas Blenkarn 1850). Another contemporaneous dictionary defines "prescribe" in part as "[t]o set or lay down authoritatively for direction; to give as a rule of conduct. To direct." 2 John Boag, <u>A Popular and Complete English Dictionary</u> 1016 (Glasgow, William Collins 1848).

manner prescribed by law," that sentence is immediately followed by this sentence: "Provided, however, that the <u>legislature</u> may, from time to time, <u>by statute</u> provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof." Wis. Const. art. I, § 5 (emphases added). The fact that the same section in the state constitution refers generally to a matter being "prescribed by law" and specifically to the legislature "provid[ing]" something "by statute" strongly suggests that "law" in that section has a broader meaning than simply "statutory law."

¶27 We turn now to a significant factor in our analysis: this is not the first time this court has addressed the question of whether the manner of jury waiver under Article I, section 5 of the Wisconsin Constitution must find prior authorization in a statute. In interpreting the meaning of "prescribed by law" in the attorney general section of our constitution in <u>City of Oak Creek</u>, we declared that "this court has consistently stated that the phrase 'prescribed by law' in art. VI, § 3 plainly means prescribed by statutory law." <u>City of Oak Creek</u>, 232 Wis. 2d 612, ¶19. But just the opposite is true with regard to Article I, section 5: as made clear by our decision in <u>Theuerkauf v. Schnellbaecher</u>, 64 Wis. 2d 79, 218 N.W.2d 295 (1974), a long line of early cases of this court determined, without any reference to an authorizing statute, that a jury trial had been waived. See <u>Theuerkauf</u>, 64 Wis. 2d at 87 (citing <u>Leonard v. Rogan</u>, 20 Wis. 568 (*540), 571 (*543) (1866); <u>Charles</u>

13

Baumbach Co. v. Hobkirk, 104 Wis. 488, 80 N.W. 740 (1899); McCormick v. Ketchum, 48 Wis. 643, 4 N.W. 798 (1880); Wooster v. Weyh, 194 Wis. 85, 216 N.W. 134 (1927); Gifford v. Thur, 226 Wis. 630, 276 N.W. 348 (1938)).

¶28 Thus this court announced in Theuerkauf: "[T]he conclusion has been reached that [Wis. Stat. §] 270.32"——the predecessor to the current Wis. Stat. § 805.01[5]——"does not state the exclusive conditions for finding waiver of jury trial." Theuerkauf, 64 Wis. 2d at 87.  In referring, after stating this proposition, to cases where no statute at all was cited in discussions of jury waiver, the Theuerkauf court was plainly implying not that conditions for finding waiver of a jury trial could be found in other statutes, but that some such conditions had their source independent of any statute enacted by the legislature.  This proposition was hinted at later in Rao, where we looked to "court-promulgated rule[s] of pleading, practice, or procedure" as well as "case law interpreting and applying these rules" to determine "the manner by which a party waives its Article I, Section 5 right of trial by jury."  Rao, 310 Wis. 2d 623, ¶¶35 n.25, 45 (citing Phelps, 282 Wis. 2d 69, ¶28).[6]

---

[5] See Sup. Ct. Order, Rules of Civil Procedure, 67 Wis. 2d 585, 585-86, 689-90, 760 (1975).

[6] That is not to say that our case law has been wholly consistent.  In Bennett v. State, a criminal case, this court noted in passing that:

> Under [Article I, section 5 of the Wisconsin Constitution], this court has repeatedly held that a party to an action may waive the right of trial by
>
> (continued)

¶29 It makes sense to interpret Article I, section 5 in this fashion given the often broad definition of the term "waiver." See, e.g., Rao, 310 Wis. 2d 623, ¶22 (quoting State v. Kelty, 2006 WI 101, ¶18 n.11, 294 Wis. 2d 62, 716 N.W.2d 886) ("[A] party's 'waiver' of the Article I, Section 5 right of trial by jury need not be a 'waiver' in the strictest sense of that word, that is, an 'intentional relinquishment of a known right.'"); William R. Anson, Principles of the Law of Contract 419 (Arthur L. Corbin ed., 3d Am. ed. 1919), quoted in Black's, supra ¶25, at 1813 ("The term waiver is one of those words of indefinite connotation in which our legal literature abounds; like a cloak, it covers a multitude of sins."). Interpreting "prescribed by law" to mean "prescribed by the legislature" assigns to the legislature the task of defining all the possible ways a person might waive his or her right to a jury trial. Interpreting the phrase to, for example, encompass the common law, allows the legislature to enumerate additional, specific manners of waiver, or to preclude particular manners of waiver

---

jury, not only in the manner prescribed by law, but by not taking exceptions on the trial of an action without a jury, the right to which is secured to him by this section.

Bennett v. State, 57 Wis. 69, 74 (1883). For the reasons provided in this opinion, we conclude that the proper inquiry under Article I, section 5, is to examine whether a particular form of jury waiver not particularly described in a statute is nevertheless "prescribed by law" other than statutory law, rather than to anchor that form to some (unexplained) basis independent of the constitutional text, as Bennett appears to have done.

15

if it so desires. This latter is the more reasonable interpretation, and thus the likelier one.

¶30 For all of these reasons, we conclude that the text of Article I, section 5 of the Wisconsin Constitution does not limit the manner of jury trial waiver to those set forth by statute. Consequently, we may look to other sources of law to determine whether the Parsons' putative waiver of their right to a jury trial was valid. This particular case may be resolved by turning to common law——specifically, to longstanding principles of contract law in Wisconsin.

¶31 "Wisconsin public policy favors freedom of contract." Solowicz v. Forward Geneva Nat'l, LLC, 2010 WI 20, ¶34, 323 Wis. 2d 556, 780 N.W.2d 111 (citing AKG Real Estate, LLC v. Kosterman, 2006 WI 106, ¶34, 296 Wis. 2d 1, 717 N.W.2d 835); see also Watts v. Watts, 137 Wis. 2d 506, 521, 405 N.W.2d 303 (1987) ("Wisconsin courts have long recognized the importance of freedom of contract and have endeavored to protect the right to contract."). "[F]reedom of contract rests on the premise that it is in the public interest to accord individuals broad powers to order their affairs through legally enforceable agreements." Ash Park, LLC v. Alexander & Bishop, Ltd., 2015 WI 65, ¶38 n.24, 363 Wis. 2d 699, 866 N.W.2d 679 (alteration in original) (quoting E. Allan Farnsworth, 2 Farnsworth on Contracts § 5.1, at 1 (3rd ed. 2004)). That is, "individuals should have the power to govern their own affairs without governmental interference." Merten v. Nathan, 108 Wis. 2d 205, 211, 321 N.W.2d 173 (1982).

¶32 There is no reason why waiver of a person's Article I, section 5 right to a jury trial should constitute an exception to our general presumption in favor of freedom of contract. "It is well settled that constitutional rights . . . may be waived." Booth Fisheries Co. v. Indus. Comm'n, 185 Wis. 127, 132, 200 N.W. 775 (1924), aff'd, 271 U.S. 208 (1926). Moreover, the action a party must take to waive his or her Article I, section 5 right to a jury trial pursuant to statute is quite minimal. For example, as explained above, a jury may be waived simply by failure to pay the required fee. Wis. Stat. § 814.61(4). Compared to a potentially accidental waiver like that, there is nothing inherently unjust about allowing parties to agree voluntarily to forego a jury in advance of trial.

¶33 In fact, the legislature has indicated agreement with this conclusion. Wisconsin Stat. ch. 218 ("Finance Companies, Auto Dealers, Adjustment Companies and Collection Agencies") contains a provision which states that "[e]xcept as provided [elsewhere], provisions of an agreement which do any of the following are void and prohibited: . . . waive the dealer's or distributor's right to a jury trial." Wis. Stat. § 218.0114(9)(a)2. The chapter defines "agreement" to mean "a contract that describes the franchise relationship between manufacturers, distributors, importers and dealers." Wis. Stat. § 218.0101(1) (emphasis added). In other words, the legislature has, in a very narrow context, prohibited contractual jury waivers. It would be strange for the legislature to foreclose such waivers under these limited circumstances if it thought

17

contractual jury waivers were prohibited in general due to a lack of express statutory authorization.[7]

¶34 Accordingly, we conclude that, consistent with longstanding principles of contract law in Wisconsin, the pre-litigation jury waiver provision in the contract between the Parsons and Associated is enforceable.

¶35 As explained, the court of appeals concluded that Associated bore the additional burden of demonstrating that the Parsons "understood the scope of and the specific nature of the rights given up by the waiver." Parsons, 370 Wis. 2d 112, ¶31. We disagree. First of all, as is apparent from our previous discussion, "a party's 'waiver' of the Article I, Section 5 right of trial by jury need not be a 'waiver' in the strictest sense of that word, that is, an 'intentional relinquishment of a known right.'" Rao, 310 Wis. 2d 623, ¶22 (quoting Kelty, 294 Wis. 2d 62, ¶18 n.11).

¶36 Second, in Wisconsin, "[w]here the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms. 'We presume the parties' intent is evidenced by the words they [choose], if those words are unambiguous.'" Tufail v. Midwest Hosp., LLC, 2013 WI 62, ¶26, 348 Wis. 2d 631,

---

[7] Nor was the legislature simply considering arbitration agreements; Wisconsin Stat. § 218.0114(9)(b)1. explains that "[n]otwithstanding par. (a)2." and subject to certain conditions, "an agreement may provide for the resolution of disputes by arbitration, including binding arbitration." § 218.0114(9)(b)1.

833 N.W.2d 586 (citation omitted) (quoting Kernz v. J. L. French Corp., 2003 WI App 140, ¶9, 266 Wis. 2d 124, 667 N.W.2d 751). While "the presumption is not conclusive in all cases," "[i]t is a familiar rule that those who sign written instruments are presumed to know their contents and their legal effect." Creasey Corp. v. Dunning, 182 Wis. 388, 396, 196 N.W. 775 (1924). "Men, in their dealings with each other, cannot close their eyes to the means of knowledge equally accessible to themselves and those with whom they deal, and then ask courts to relieve them from the consequences of their lack of vigilance." Kruse v. Koelzer, 124 Wis. 536, 541, 102 N.W. 1072 (1905).

¶37 The words of the Parsons' contract are unambiguous. By those words, both Associated and the Parsons waived any right to a jury trial. Further, the contract provides, in boldface, that "PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE." "It is not the function of the court to relieve a party to a freely negotiated contract of the burdens of a provision which becomes more onerous than had originally been anticipated." Ash Park, LLC, 363 Wis. 2d 699, ¶38 (quoting 11 Richard A. Lord, Williston on Contracts § 1:1 (4th ed. 2002)). We conclude that Associated does not need to offer additional proof that the Parsons knowingly and voluntarily agreed to this waiver.

¶38 Before proceeding, we address Taft's affidavit. Relying on the affidavit, the court of appeals suggested that Associated had obtained the jury waiver provision fraudulently. However, "a party seeking to invalidate a provision in a

19

contract . . . has the burden of proving facts that justify a court's reaching the legal conclusion that the provision is invalid." Wisconsin Auto Title Loans, Inc. v. Jones, 2006 WI 53, ¶30, 290 Wis. 2d 514, 714 N.W.2d 155. The circuit court was "unpersuaded" by the allegations in Taft's affidavit and apparently found them to be incredible, relying in part on its view of Taft's business acumen and the specific characteristics of the waiver itself. The record adequately supports the circuit court's determination, and thus the court of appeals was not entitled to substitute its own view of the evidence for the circuit court's view of the evidence. See, e.g., Lemke v. Lemke, 2012 WI App 96, ¶55, 343 Wis. 2d 748, 820 N.W.2d 470 ("[A]n appellate court does not find facts."); State v. Turner, 136 Wis. 2d 333, 343, 401 N.W.2d 827 (1987) ("In general, we are bound not to upset the trial court's findings of historical or evidentiary fact unless they are contrary to the great weight and clear preponderance of the evidence."); Klein-Dickert Oshkosh, Inc. v. Frontier Mortg. Corp., 93 Wis. 2d 660, 663, 287 N.W.2d 742 (1980) ("[W]hen the trial judge acts as the finder of fact, he is the ultimate and final arbiter of the credibility of witnesses. When more than one inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact.").

¶39 The court of appeals did not stop there, additionally concluding that the clause was substantively and procedurally unconscionable. Parsons, 370 Wis. 2d 112, ¶¶32-39. The court of appeals explained that it was addressing this question

20

because it "may well arise during trial, as it did at oral argument." Id., ¶32. Given the posture of the case, the findings of the circuit court regarding the affidavit, and the skeletal state of the record, the decision of the court of appeals to reach out and opine on unconscionability was erroneous. The conclusion of the court of appeals that the Parsons' contractual jury waiver is unconscionable is reversed. The circuit court may decide on remand whether (and if so, when) unconscionability may be addressed.[8]

### B. Whether Associated's Motion is Untimely

¶40 We have concluded that that the pre-litigation jury waiver provision in the contract between the Parsons and Associated is enforceable. But the Parsons counter Associated's waiver claim with a "waiver" claim of their own: they claim that Associated waited too long to object to the Parsons' jury demand

---

[8] The Parsons argued before the circuit court that Carol was not bound by the jury waiver signed by Taft. The circuit court rejected that argument, characterizing it as "superficial." Despite this warning, the Parsons' argument on this issue before this court is a single paragraph long and does not cite to any legal authorities. "[W]e do not usually address undeveloped arguments," and we will not do so here. State v. Gracia, 2013 WI 15, ¶29 n.13, 345 Wis. 2d 488, 826 N.W.2d 87.

Additionally, the parties do not develop arguments that we should analyze waiver of any statutory right to a jury trial the Parsons possess differently from how we analyze waiver of their constitutional right to a jury trial, so we do not do so. See Wis. Stat. § 805.01(1) ("The right of trial by jury as declared in article I, section 5, of the constitution or as given by a statute and the right of trial by the court shall be preserved to the parties inviolate.").

and thus may not now do so. The circuit court below rejected this claim in part because the Parsons had not provided law supporting it. The court of appeals reversed this conclusion, stating that Associated had forfeited the right to strike the Parsons' jury demand, had waived the right under Wis. Stat. § 805.01(3), and were equitably estopped from asserting the right. Parsons, 370 Wis. 2d 112, ¶¶21-23. We disagree with all three determinations.

¶41 The only statutory authority provided in this case is Wis. Stat. § 805.01, which states in relevant part:

> (1) Right Preserved. The right of trial by jury as declared in article I, section 5, of the constitution or as given by a statute and the right of trial by the court shall be preserved to the parties inviolate.
>
> (2) Demand. Any party entitled to a trial by jury or by the court may demand a trial in the mode to which entitled at or before the scheduling conference or pretrial conference, whichever is held first. The demand may be made either in writing or orally on the record.
>
> (3) Waiver. The failure of a party to demand in accordance with sub. (2) a trial in the mode to which entitled constitutes a waiver of trial in such mode.

§ 805.01(1)-(3) (emphases added). The court of appeals concluded Associated was bound by the emphasized text because Associated viewed itself as "entitled to a trial . . . by the court." See Parsons, 370 Wis. 2d 112, ¶22. One problem with the reasoning of the court of appeals is that, pursuant to it, both Associated and the Parsons could waive any entitlement to a mode of trial and the mode of trial would remain undetermined.

22

In any event, Associated was not, in fact, "demand[ing] a trial in the mode to which entitled." It was instead moving to strike the Parsons' jury demand because the Parsons were not themselves "entitled to a trial by jury." These are not identical actions. See Judicial Council Committee Note, 1974, to Wis. Stat. § 805.01, S. Ct. Order, Rules of Civil Procedure, 67 Wis. 2d at 690 ("The reference to trial by the court is included because Wisconsin, unlike most states, has long recognized a constitutional right to trial by the court in appropriate cases." (citing Callanan v. Judd, 23 Wis. 343 (1868)).

¶42 The parties devote a significant amount of briefing to establishing with precision the timeline below and whether Associated's putative delay was reasonable in light of various events that occurred as litigation proceeded. In the absence of a statutory directive, we cannot conclude that the circuit court——the entity with the best grasp of the unfolding of the proceedings below and of the relative equities of the situation——erroneously exercised its discretion in allowing Associated to rely on its otherwise-enforceable agreement with the Parsons not to try this case before a jury. C.f., e.g., Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 220, 226-27 (3d Cir. 2007) (reviewing district court's decision not to "bar[] DaimlerChrysler's motion to strike Tracinda's jury demand on the basis of laches" after DaimlerChrysler waited three years to file the motion under abuse-of-discretion standard). Further, having contracted away their right, any reliance that the Parsons might have had on Associated's initial acquiescence

23

in their unfounded demand for a jury trial was not reasonable. Because reasonable reliance is a requirement of equitable estoppel, Associated is not equitably estopped from striking the Parsons' demand. See Affordable Erecting, Inc. v. Neosho Trompler, Inc., 2006 WI 67, ¶33, 291 Wis. 2d 259, 715 N.W.2d 620 ("There are four elements of equitable estoppel: (1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment." (emphasis added) (citing Village of Hobart v. Brown Cnty., 2005 WI 78, ¶36, 281 Wis. 2d 628, 698 N.W.2d 83)).

¶43 In sum, Associated's motion to strike the Parsons' jury demand was not untimely.

¶44 Before we conclude, we stress that the Parsons are not being denied their day in court. We simply decide today that any trial that occurs on remand will be a bench trial. We add that the circuit court may determine, as this litigation proceeds, whether the Parsons may bring additional arguments related to the validity of any agreements into which they entered with Associated.

IV. CONCLUSION

¶45 We conclude that the pre-litigation jury waiver provision in the contract between the Parsons and Associated is enforceable and that Associated does not need to offer additional proof that the Parsons knowingly and voluntarily agreed to this waiver. We further conclude that Associated's

24

motion to strike the Parsons' jury demand was not untimely. Consequently, we reverse the decision of the court of appeals and remand the case to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶46  DANIEL KELLY, J., did not participate.

¶47 ANN WALSH BRADLEY, J. *(dissenting).* The right to a jury trial is a bedrock principle upon which this state is founded. Article I, section 5 of the Wisconsin Constitution guarantees that the "right of trial by jury shall remain inviolate . . . but . . . may be waived by the parties in all cases in the manner prescribed by law . . . ." This case requires us to examine the prescribed manner by which a party may contractually waive this guaranteed right.

¶48 Specifically we address whether Taft and Carol Parsons ("the Parsons") waived the right to a jury trial when Taft Parsons signed several loan documents, including one that contained a provision waiving the right to a have a jury resolve any claims against the lending institution.

¶49 The majority concludes that the pre-litigation jury waiver provision in the contract between the Parsons and Associated Bank-Corp ("Associated") is enforceable. Majority op., ¶45. In reaching its conclusion, the majority opinion ignores both significant precedent and the facts of this case.

¶50 Following a clear United States Supreme Court directive, numerous federal circuits have determined that a party must voluntarily and knowingly agree to a jury waiver. Rather than examining the totality of the circumstances, the majority instead rests on an ipse dixit analysis——if the jury waiver clause states that the waiver is knowingly and voluntarily made, then it must be so.

¶51 The damaging effect of the majority's departure from this well-established rule is demonstrated by the egregious

1

facts of this case, which the majority to a large extent also ignores. Indeed, the facts here are so egregious that the court of appeals determined that the jury waiver clause was unenforceable because it "is both procedurally and substantively unconscionable."[1]  Parsons v. Associated Banc-Corp, 2016 WI App 44, ¶39, 370 Wis. 2d 112, 881 N.W.2d 793.

¶52 According to the amended complaint, an affidavit, and the documents of record, the Parsons planned a townhouse development to refurbish their neighborhood, but their plans went awry during the course of dealing with the bank. Instead of a townhouse development they were faced with bankruptcy, foreclosure and loan repayment demands for work that was never done. The loan officer involved was convicted of bank fraud in federal court related to a different townhouse project, with remarkably similar facts to those presented here.

¶53 Among the many documents he presented for their signature was a promissory note that contained a jury waiver clause. The Parsons were not allowed any time to review the documents or consult with an attorney before signing them. The loan officer threatened them by stating that he would withdraw the construction loan if they did not promptly sign the documents. Faced with the option of losing it all or promptly signing the documents, Taft Parsons signed. In their complaint

---

[1] "Unconscionability has often been described as the absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the other party." Wisconsin Auto Title Loans, Inc. v. Jones, 2006 WI 53, ¶32, 290 Wis. 2d 514, 714 N.W.2d 155.

2

the Parsons allege multiple acts of fraud, extortion and threats that occurred under the bank's watch.

¶54 Additionally, Associated waited years to object after the Parsons demanded a jury trial in compliance with Wisconsin's civil procedure statutes. The majority pays no heed to this delay, however, concluding that Associated's motion to strike the Parsons' jury demand was timely. Majority op., ¶4.

¶55 Contrary to the majority, I conclude that Associated Bank has not met its burden of proving that the Parsons knowingly and voluntarily waived their right to trial by jury. I further determine that Associated's motion to strike the Parsons' jury demand was untimely. Accordingly, I respectfully dissent.

I

¶56 In the span of only three paragraphs, the majority opinion dispenses with the question of whether Associated must demonstrate that the Parsons knowingly and voluntarily waived their right to a jury trial. See majority op., ¶¶35-37. Ignoring relevant precedent including the numerous federal circuits that have addressed this issue, the majority determines that "Associated does not need to offer additional proof that the Parsons knowingly and voluntarily agreed to this waiver." Id., ¶37.

¶57 Relying instead on this court's decision in Rao v. WMA Securities, Inc., the majority asserts that "a party's 'waiver' of the Article I, Section 5 right of trial by jury need not be a 'waiver' in the strictest sense of that word, that is, an

3

'intentional relinquishment of a known right.'" Majority op., ¶35 (quoting Rao, 2008 WI 73, ¶22, 310 Wis. 2d 623, 752 N.W.2d 220). Additionally, it contends that Associated need not demonstrate that the waiver was knowing and voluntary because the terms of the Parsons' contract with Associated are unambiguous. Majority op., ¶¶36-37.

¶58 Despite its proffered rationales, the majority opinion finds little support in the law. First, its reliance on Rao is misplaced. In Rao, this court concluded that the circuit court did not violate the defendant's right to a jury trial because the defendant waived its right to a jury in the manner prescribed by law set forth in Wis. Stat. §§ 804.12(2) (failure to make discovery; sanctions) and 806.02 (default judgment). 310 Wis. 2d 623, ¶5.

¶59 Taking language out of context, the majority quotes Rao for the proposition that a jury waiver need not be an intentional relinquishment of a known right. Majority op., ¶35 (quoting Rao, 310 Wis. 2d 623, ¶22). However, the majority ignores that Rao did not address contractual waiver of the right. Rather, the context in which Rao made this statement was in addressing the consequences of a party's failure to comply with statutory requirements. See Rao, 310 Wis. 2d 623, ¶22 (a party may waive the right to a trial by jury "by failing to assert the right timely (as when a party fails to demand a jury trial timely in accordance with § (Rule) 805.01) or by violating a law setting conditions on the party's exercise of the jury

4

trial right (as when a party fails to pay the jury fee timely in accordance with Wis. Stat. § 814.61).").

¶60  Second, the majority superficially addresses the issue of a contractual waiver by citing the basic principle that where the terms of a contract are unambiguous, we presume the parties intent is reflected in those words.  Majority op., ¶36 (quoting Tufail v. Midwest Hosp., LLC, 2013 WI 62, ¶26, 348 Wis. 2d 631, 833 N.W.2d 586).  The majority reasons that "it is a familiar rule that those who sign written instruments are presumed to know their contents and their legal effect."  Majority op., ¶36 (quoting Creasy Corp. v. Dunning, 182 Wis. 388, 396, 196 N.W. 775 (1924).  Accordingly, it concludes that because the words of the contract are unambiguous, "[b]y those words, both Associated and the Parsons waived any right to a jury trial."  Majority op., ¶37.

¶61 Reliance on general principles regarding freedom of contract is insufficient when a contract waives a constitutional right.  K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 756 (6th Cir. 1985).  Indeed, none of the cases cited by the majority as support for its conclusion——that Associated need not offer additional proof of knowing and voluntary waiver——even addresses the waiver of a constitutional right.[2]

---

[2] See Tufail v. Midwest Hosp., LLC, 2013 WI 62, ¶26, 348 Wis. 2d 631, 833 N.W.2d 586 (addressing a contract dispute between a landlord and a tenant over the terms of a commercial lease of property); Kernz v. J.L. French Corp., 2003 WI App 140, ¶9, 266 Wis. 2d 124, 667 N.W.2d 751 (employment contract dispute); Creasy Corp. v. Dunning, 182 Wis. 388, 396, 196 N.W. 775, 778 (1924) (action to recover payment for merchandise); Kruse v. Koelzer, 124 Wis. 536, 541, 102 N.W. 1072
(continued)

5

¶62 Third, in its fervor to genuflect at the altar of freedom of contract, the majority ignores the significant precedent that has addressed the means by which a party may contractually waive its right to a jury trial. As the United States Supreme Court explains, courts should "indulge every reasonable presumption" against waiver of a jury trial due to the right's fundamental nature. Aetna Ins. Co. v. Kennedy to Use of Bogash, 301 U.S. 389, 393 (1937) (citations omitted); see also D.H. Overmyer Co. Inc., of Ohio v. Frick Co., 405 U.S. 174, 186 (1972) ("[W]e do not presume acquiescence in the loss of fundamental rights.") (citation omitted). Indeed, it has instructed that waivers be intentional. Brookhart v. Janis, 384 U.S. 1, 4 (1966); see also Bogash, 301 U.S. at 393; Ohio Bell Tel. Co. v. Public Utils. Comm'n of Ohio, 301 U.S. 292, 307 (1937); D.H. Overmyer, 405 U.S. at 187.

¶63 The United States Supreme Court has directed, "for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege." Brookhart, 384 U.S. at 4 (internal citation omitted). In accordance with this directive, numerous federal circuits that have considered this issue have concluded that a jury waiver clause can only be effective where a party agrees to the provision knowingly and voluntarily. See Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 222 (3d Cir. 2007)

_____

(1905) (action brought to reform a warranty deed); Ash Park, LLC v. Alexander & Bishop, Ltd., 2015 WI 65, ¶38, 363 Wis. 2d 699, 866 N.W.2d 679 (action seeking specific performance of real estate purchase agreement).

6

("To be valid, a jury waiver must be made knowingly and voluntarily based on the facts of the case.") (citations omitted); <u>Med. Air Tech. Corp. v. Marwan Inv., Inc.</u>, 303 F.3d 11, 19 (1st Cir. 2002) ("courts will not enforce the jury waiver unless it was entered into knowingly and voluntarily"); <u>Seaboard Lumber Co. v. United States</u>, 903 F.2d 1560, 1563 (Fed. Cir. 1990) ("Waiver requires only that the party waiving such right do so 'voluntarily' and 'knowingly' based on the facts of the case."); <u>Leasing Serv. Corp. v. Crane</u>, 804 F.2d 828, 833 (4th Cir. 1986) ("Where waiver is claimed under a contract executed before litigation is contemplated, we agree with those courts that have held that the party seeking enforcement of the waiver must prove that consent was both voluntary and informed."); <u>K.M.C.</u>, 757 F.2d at 756 ("Those cases in which the validity of a contractual wavier of jury trial has been in issue have overwhelmingly applied the knowing and voluntary standard."); <u>Nat'l Equip. Rental, Ltd. v. Hendrix</u>, 565 F.2d 255, 258 (2d Cir. 1977) ("It is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally."). <u>But see</u> <u>IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union</u>, 512 F.3d 989, 992-94 (7th Cir. 2008) (declining to follow other federal circuits).

¶64 Additionally, the predominant federal rule comports with analogous Wisconsin case law, such as the contractual waiver-of-venue cases. <u>Brunton v. Nuvell Credit Corp.</u>, 2010 WI 50, ¶34, 325 Wis. 2d 135, 785 N.W.2d 302 ("[T]he waiver of a

7

fundamental constitutional right requires a knowing, intelligent, and voluntary waiver."). It is also in accord with the principle that the waiver of a constitutional right requires a voluntary act. Wendlandt v. Indus. Comm'n, 256 Wis. 62, 66, 39 N.W.2d 854 (1949).

¶65 Whether a waiver of a constitutional right was knowing and voluntary is a fact-specific inquiry that is "separate and distinct from the operation of rules of substantive contract law . . . ." K.M.C., 757 F.2d at 756. As the relevant case law instructs, this inquiry should focus on the totality of the circumstances. See, e.g., Med. Air Tech., 303 F.3d at 19 n.4.

¶66 This inquiry emphasizes the relative bargaining power of the parties, as well as other factors including the respective roles of the parties in determining the terms of the waiver, the amount of time the waiving party had to consider the waiver and whether the waiving party was represented by counsel. See Nat'l Equip. Rental, 565 F.2d at 258 (emphasizing the parties' inequality in bargaining power); Med Air Tech., 303 F.3d at 19 n.4 (setting forth factors that have been considered as part of a totality of the circumstances analysis).

II

¶67 Although the question of whether a party knowingly and voluntarily waived the right to a jury is a fact-specific inquiry, the majority opinion asserts that "[i]n part because of the unusual posture of this case, the facts pertaining to this lawsuit are largely unimportant to the disposition of this appeal." Majority op., ¶5. The majority fails to explain how

8

the procedural posture of this case is so unusual. This case is before the court because the Parsons appeal a non-final order of the circuit court granting Associated's motion to strike the Parsons' jury demand.

¶68 Based on this slight justification, the majority opinion neglects to set forth or analyze the facts of the case beyond a brief summary of the allegations in the Parsons' complaint. Because the majority fails to do so, I set forth the necessary facts that inform the totality of the circumstances analysis. Like the court of appeals, I consider the allegations in the complaint, the loan documents, and the Parsons' affidavit.[3]

¶69 The events that gave rise to this appeal began when the Parsons obtained a home equity loan in the amount of $40,000 and a construction loan in the amount of $774,000 from State Financial Bank.[4] They obtained these loans because they wanted to convert deteriorating properties in their Milwaukee neighborhood, including their own home, into a townhouse project.

---

[3] Additionally, the majority asserts that the court of appeals erred in considering the facts alleged in Taft Parsons affidavit, which is a part of the evidentiary record in this case. Majority op., ¶38. According to the majority, the circuit court was "unpersuaded" by the allegations in the affidavit and "[t]he record adequately supports the circuit court's determination . . . ." Id. However, because the majority fails to set forth the parts of the record it believes supports the circuit court's interpretation, it is the majority's reasoning here that is unpersuasive.

[4] Associated Bank acquired State Financial Bank in 2006.

9

¶70 The loan documents were signed by Aaron Moeser, a bank employee who was later convicted in federal court for fraudulent activity stemming from a loan scandal involving a similar townhouse construction project. Before any work was done on the Parson's townhouse project, the Parsons were instructed to sign five additional loan documents consisting of thirty pages of pre-printed forms, one of which contained the jury waiver clause at issue here.

¶71 According to Taft Parsons' affidavit, his objections to the new loan documents were met with threats from Moeser to pull the construction loan. This would have left the Parsons with debt even when no construction had been completed. Taft received no explanation of any terms in the documents except oral instructions to insert a specific interest rate. The bank refused to allow him the time and opportunity to read the documents or consult an attorney.[5]

¶72 Additionally, the loan documents gave State Financial Bank and Wisconsin Title Closing & Credit Services the authority to approve the contractor's construction draw requests. State Financial Bank and the title company were also given sole responsibility for verifying that the contractor had performed the construction and other work on the project for which it requested payment. The documents also allowed payments for services that were not authorized on the project budget and

---

[5] There is no evidence in the record contradicting the factual assertions made in the Parsons' affidavit.

10

secured all of the debt, including the construction loan, with a mortgage on the Parsons' home.

¶73 After the loan documents were signed, multiple draws were approved over the Parsons' objections, despite the fact that no actual work had begun on the townhouse project. The Parsons later received a notice of tax levy against the contractor from the IRS, indicating that it owed over $300,000 in taxes. It ordered the townhouse project to pay the IRS any money the project was obligated to pay the contractor. The Parsons then discovered a number of unpaid judgments against the contractor and forwarded the IRS notice and their findings to Moeser.

¶74 Moeser ended the construction loan and stopped payments to the contractor. This left the Parsons with a debt for the loan proceeds that had already been paid. The Parsons were unable to pay and State Financial Bank commenced a foreclosure action against the Parsons' home. State Financial Bank was taken over by Associated Bank, which continued the foreclosure action. The Parsons filed for bankruptcy, but made payments to the bank on the home equity loan, which resulted in dismissal of the foreclosure action.

¶75 I proceed next to apply those facts to the law. As set forth above, the federal circuits addressing this issue emphasize the relative bargaining power of the parties in considering whether a party knowingly and voluntarily agreed to waive the right to a jury trial. This case is analogous to Nat'l Equip. Rental, in which the owner of a small construction

11

company entered into a predatory loan agreement when he could not satisfy obligations on debt owed for construction equipment. 565 F.2d at 256-57. The pre-printed loan documents contained a jury waiver clause, which the Second Circuit concluded was unenforceable. Id. at 258.

¶76 Examining the circumstances of the jury waiver, the Nat'l Equip. Rental court determined that "it is clear that Hendrix did not have any choice but to accept the NER contract as written if he was to get badly needed funds." Id. Thus, the Second Circuit concluded that "[t]his gross inequality in bargaining power suggests, too, that the asserted waiver was neither knowing nor intentional." Id.

¶77 Similarly, the facts in the record here demonstrate that the Parsons did not voluntarily assent to the jury waiver clause. The complaint and Taft Parsons' affidavit contain facts sufficient to show that the promissory note was presented to him as a "take-it-or-leave-it" deal. He was told to sign it immediately or risk having Moeser cancel the $774,000 construction loan. This would have left the Parsons with $40,000 in debt on the home equity loan, with no work having been completed on the townhouse project.

¶78 A number of other factors may be considered in a totality of circumstances analysis. Med Air Tech., 303 F.3d at 19 n.4. These include, but are not limited to the respective roles of the parties in determining the terms of the waiver, the amount of time the waiving party had to consider the waiver and whether the waiving party was represented by counsel. Id.

12

¶79 A number of factors that do not support a determination that a waiver was knowing and voluntary are present in this case. The Parsons had no role in determining the terms of the waiver, which was included among five pre-printed loan documents totaling nearly thirty pages. Additionally, Taft Parsons was given no time to sign the waiver and was not permitted the opportunity to consult with counsel.

¶80 Finally, under this court's decision in Brunton, the party seeking to enforce the waiver of a constitutional right has the burden of showing that a person had actual knowledge he was waiving a constitutional right. 325 Wis. 2d 135, ¶36 ("Establishing that a party knew of the right at issue is essential to establishing waiver."). In this case, Associated Bank has presented no evidence rebutting the facts presented in Taft Parsons' affidavit. By failing to do so Associated has not met its burden of proof. See, e.g., Lane v. Sharp Packaging Sys., Inc., 2002 WI 28, ¶41, 251 Wis. 2d 68, 640 N.W.2d 788 (resolving discovery dispute on the basis of an uncontested affidavit); see also Schroeder v. Wacker, No. 2000AP83-FT, unpublished slip op., ¶17 (Wis. Ct. App. Apr. 26, 2000) (relying on an uncontested affidavit to prove damages).

¶81 Accordingly, I conclude that Associated Bank has not met its burden of proving that the pre-litigation jury waiver provision in the contract between the Parsons and Associated Bank was made knowingly and voluntarily.

13

III

¶82 Finally, I turn to the majority's conclusion that Associated's motion to strike the Parsons' jury demand was timely. Majority op., ¶43.

¶83 Pursuant to Wis. Stat. § 805.01, a party may demand a trial in the mode to which it is entitled at or before the scheduling conference or pretrial conference, whichever is held first:

    (1) RIGHT PRESERVED. The right of trial by jury as declared in article I, section 5, of the constitution or as given by a statute and the right of trial by the court shall be preserved to the parties inviolate.

    (2) DEMAND. Any party entitled to a trial by jury or by the court may demand a trial in the mode to which entitled at or before the scheduling conference or pretrial conference, whichever is held first. The demand may be made either in writing or orally on the record.

    (3) WAIVER. The failure of a party to demand in accordance with sub. (2) a trial in the mode to which entitled constitutes a waiver of trial in such mode. . . .

¶84 The Parsons' complaint and amended complaint made a demand for a jury trial and the jury fee was timely paid. Associated filed multiple pleadings with no objection to the jury demand. However, three years into litigation, at the third pretrial conference, the bank raised an off-the-record objection to the Parsons' jury demand. It then filed a motion to strike the Parsons' jury demand, arguing that when Taft Parsons signed the promissory note with the waiver clause ten years earlier, the Parsons waived any right to a jury trial involving the bank.

14

¶85 Nevertheless, the majority reasons that Associated was not demanding a trial in the mode to which it was entitled. Majority op., ¶41. Instead, the majority contends that it was moving to strike the Parsons' jury demand because the Parsons were not themselves entitled to a jury trial. Id.

¶86 The majority further refuses to apply equitable estoppel because "having contracted away their right, any reliance that the Parsons might have had on Associated's initial acquiescence in their unfounded demand for a jury trial was not reasonable." Majority op., ¶42. Thus, the majority concludes that "[b]ecause reasonable reliance is a requirement of equitable estoppel, Associated is not equitably estopped from striking the Parsons' demand." Id. (citing Affordable Erecting, Inc. v. Neosho Trompler, Inc., 2006 WI 67, ¶33, 291 Wis. 2d 259, 715 N.W.2d 620.

¶87 Contrary to the majority, I conclude that even if the bank's objection were timely as the majority claims, the bank is equitably estopped from raising this objection three years into litigation. Equitable estoppel generally bars one party from taking a position upon which another party relies and then subsequently changing that position to the detriment of the relying party. See Affordable Erecting, 291 Wis.2d 259, ¶33 ("There are four elements of equitable estoppel: (1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment.") (citation omitted).

15

¶88 The bank's failure to challenge the Parsons' jury demand led the Parsons to spend three years preparing for a jury trial. A review of the record reveals numerous motions, hearings, and other activity demonstrating that the parties were moving toward trial.

¶89 It was reasonable for the Parsons to prepare for a jury trial because not only did they timely demand one, the bank actively participated in pre-trial litigation. As the court of appeals explained, participation by the bank without objection to the mode of trial "is both action (actually participating) and inaction (not objecting to the mode of trial) upon which the Parsons reasonably relied." Parsons, 2016 WI App 44, ¶23.

¶90 I agree with the court of appeals that changing the mode of trial three years into the case is detrimental to both the Parsons and to reasonable and efficient court administration. Thus, I conclude that even if the bank's objection were timely, it is equitably estopped from making its much belated claim for a court trial.

¶91 Contrary to the majority, I conclude that Associated Bank has not met its burden of proving that the Parsons knowingly and voluntarily waived their right to trial by jury. I further determine that Associated's motion to strike the Parsons' jury demand was untimely. Accordingly, I respectfully dissent.

¶92 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

16