Taft Parsons, Jr. and Carol Parsons,
Plaintiffs-Appellants,

v.

Associated Banc-Corp, Defendant-Respondent†,

XYZ Insurance Company, Defendant.

Court of Appeals

*No. 2014AP2581. Oral argument November 4, 2015.
—Decided May 10, 2016.*

2016 WI App 44

(Also reported in 881 N.W.2d 793.)

† Petition for Review filed.

116

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Alex Flynn* of *Alex Flynn & Associates, S.C.* of Milwaukee. The cause was orally argued by *Alex Flynn*.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Robert G. Pyzyk* and *James J. Carrig* of *Niebler, Pyzyk, Roth & Carrig, LLP*, of Menomonee Falls. The cause was orally argued by *James J. Carrig*.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. KESSLER, J. Taft and Carol Parsons (the Parsons)[1] appeal a non-final order of the circuit court granting Associated Banc-Corp's (the bank) motion to strike the Parsons' jury demand.[2] The circuit court concluded that Taft knowingly and voluntarily waived the Parsons' right to a jury trial because he signed several loan documents provided by the bank, one of which waived the right to have a jury resolve *any* claims against the bank "arising out of or in *any* way related to this document, *any* other related document, or *any* relationship between the borrower and the lender." (Emphasis added.) For reasons we explain below, we reverse and remand for a jury trial.

## BACKGROUND

¶ 2. This case involves a home equity loan and a construction loan obtained by the Parsons from State Financial Bank[3] for the construction of a townhouse project in Milwaukee. The facts asserted here are taken from the complaint, an affidavit submitted by Taft Parsons, and the loan documents submitted by the bank, all of which are in the record before us. The Parsons' civil suit against the bank alleges that the bank violated Wisconsin's anti-racketeering statute, WIS. STAT. § 946.83(1) (2013–14),[4] and that the bank negligently hired, trained, and supervised Aaron Moeser, the loan officer managing the Parsons' con-

---

[1] On occasion we refer to Taft and Carol Parsons by their first names where particular facts or arguments apply to them individually.

[2] We granted the Parsons' petition for leave to appeal from a non-final order in an order dated December 12, 2014.

[3] Associated Bank acquired State Financial Bank in 2006.

[4] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

119

struction project. According to the complaint, Moeser was convicted in federal court for fraudulent activity stemming from a loan scandal that involved remarkably similar facts to those alleged here.

## The Construction Project and Loan Documents

¶ 3. In 2002, the Parsons wanted to convert the rundown houses in their Milwaukee neighborhood into a townhouse project. The project was to consist of a row of twelve townhouses called the Stark Street Rowhouses. The Parsons' plan included razing their own home and building the first six townhouses on the adjacent lots they owned.

¶ 4. The Parsons discussed their plan to construct the townhouses with an acquaintance, Joseph Bowles, the vice president of Central City Construction (CCC). The Parsons asked Bowles if CCC would be the general contractor for the project. Thereafter, Bowles introduced the Parsons to Michael Woyan, the founder and head of an organization called People's Action Redevelopment Commission.

¶ 5. Woyan told the Parsons that he would try to find bank funding for the Parsons' townhouses. Shortly thereafter, Woyan presented the Parsons with two loan commitment letters already signed by Moeser, on behalf of State Financial Bank. One letter was for a home equity loan in the amount of $40,000. The other letter was for a construction loan in the amount of $774,000. The Parsons signed these contracts. Three months later, the Parsons and CCC executed a "Standard Form of Agreements Between Owner and Design/Builder," which divided the construction project into multiple phases and assigned a budget to each phase.

¶ 6. During the next six or seven months, CCC failed to complete *any part* of the "Owner and Design/Builder" agreement. Approximately seven months after the "Owner and Design/Builder" agreement was signed, Woyan, Moeser, and Bowles presented the Parsons with multiple loan documents to sign. The complaint alleged that the Parsons were not allowed any time to review the documents or consult with an attorney before signing, and that Moeser threatened to withdraw the construction loan if Taft did not promptly sign the documents.

¶ 7. The package of documents Moeser, Woyan, and Bowles demanded Taft sign consisted of nearly thirty pages of various pre-printed forms. The package included: (1) a Construction Disbursement Agreement; (2) a Promissory Note; (3) the Construction Loan Agreement; (4) the Closing Statement; and (5) the Construction Mortgage. These documents had the collective effect, among other things, of giving only State Financial Bank and Wisconsin Title Closing & Credit Services, rather than the Parsons, the authority to approve CCC's construction draw requests and the responsibility for verifying that CCC had actually done the construction and other work on the project for which CCC requested payment. The documents also allowed payments for services that were not authorized on the Project Budget and secured everything, including the construction loan, with a mortgage on the Parsons' home.

¶ 8. Among the nearly thirty pages of printed form documents presented to Taft was a Promissory Note containing the following jury waiver clause:

WAIVER OF JURY TRIAL. THE BORROWER AND THE LENDER (BY THEIR ACCEPTANCE HEREOF)

HEREBY VOLUNTARILY, KNOWINGLY, IRREVO-
CABLY AND UNCONDITIONALLY WAIVE ANY
RIGHT TO HAVE A JURY PARTICIPATE IN RE-
SOLVING ANY DISPUTE (WHETHER BASED
UPON CONTRACT, TORT, OR OTHERWISE) BE-
TWEEN OR AMONG THE BORROWER AND THE
LENDER ARISING OUT OF OR IN ANY WAY RE-
LATED TO THIS DOCUMENT, ANY OTHER RE-
LATED DOCUMENT, OR ANY RELATIONSHIP BE-
TWEEN THE BORROWER AND THE LENDER.
THIS PROVISION IS A MATERIAL INDUCEMENT
TO THE LENDER TO PROVIDE THE FINANCING
DESCRIBED HEREIN OR IN OTHER LOAN DOCU-
MENTS.

¶ 9. After Taft signed the document package, multiple draws were approved over Taft's objection, despite the fact that no actual work had even begun on the townhouse project. As a result of Taft's objections, Moeser presented a new Disbursement Agreement requiring Taft's signature to approve payments. CCC continued to submit post-closing payment requests to State Financial Bank, with no work having been performed. Bowles's signature appears in the place where Taft's signature was supposed to be, and the money was released.

¶ 10. Early in 2005, Taft received a notice of tax levy against CCC from the IRS, indicating that CCC owed over $300,000 in taxes, and ordering the townhouse project to pay the IRS any money the project was obligated to pay CCC. Taft then discovered a number of unpaid judgments against CCC. Taft forwarded the IRS notice and his findings to Moeser. Moeser then ended the construction loan and stopped payments to CCC. This left the Parsons with a debt for the loan proceeds which had been paid out, which the Parsons were unable to pay. State Financial Bank commenced

a foreclosure action against the Parsons' home. State Financial Bank was taken over by Associated Bank, which continued the foreclosure action. The Parsons filed for bankruptcy, but made payments to the bank on the Home Equity Loan, ultimately resulting in dismissal of the foreclosure action.

## Action Underlying This Appeal

¶ 11. In 2011, five years after Associated Bank acquired State Financial Bank, the Parsons sued Associated Bank alleging a pattern of racketeering activity under Wis. Stat. § 946.83, and alleging that the bank negligently hired, supervised, and trained Moeser.[5] As relevant to this appeal, the Parsons alleged that Moeser's multiple acts of fraud, extortion, and threats occurred under State Financial Bank's watch, for which Associated Bank assumed liability when it purchased State Financial Bank and continued to employ Moeser.

¶ 12. The Parsons' complaint contained a jury demand, as did a subsequent amended complaint. The jury fee was paid. The bank participated actively in the litigation for nearly three years, filing multiple pleadings with no objection to the jury demand. However, three years into the litigation, at the third pretrial conference in 2014, the bank raised an off-the-record objection to the Parsons' jury demand. Later, the bank filed a motion to strike the Parsons' jury demand, arguing that when Taft signed the Promissory Note

---

[5] In 2011, Moeser, Woyan, Bowles, and others were federally indicted for conspiracy to commit bank fraud in connection with another townhouse project involving a similar set of facts. *See United States v. Moeser*, 758 F.3d 793 (7th Cir. 2014).

with the waiver clause ten years earlier, the Parsons waived any right to a jury trial involving the bank.

¶ 13. The Parsons opposed the motion on multiple grounds, including: (1) Associated Bank waited three years to contest the Parsons' jury demand, thus, under Wisconsin statutes, the bank waived its right to object to the jury; (2) Carol did not sign the Promissory Note and was not bound by the asserted waiver; (3) the Parsons' claims against Associated Bank were based in tort, not contract; and (4) no Wisconsin case has held a jury waiver clause enforceable.

¶ 14. The circuit court granted Associated Bank's motion, concluding that: (1) a jury trial can be contractually waived; (2) the Parsons did not cite any law showing that the bank waived its right to object to a jury trial; (3) the bank properly relied on the jury waiver clause as the basis for its motion, regardless of whether the claims arose out of contract or tort; and (4) the waiver clause applied to Carol. We granted the Parsons' motion for leave to appeal the circuit court's non-final order and stayed the trial in the circuit court.

## DISCUSSION

¶ 15. On appeal, the Parsons contend that: (1) they have a constitutional and statutory right to a jury trial that cannot be waived; (2) contrary to the requirements of Wisconsin statutes, the circuit court allowed Associated Bank to object to a jury trial years after a jury was properly demanded; and (3) if the right to a jury trial can be contractually waived, the clause in this case did not constitute a valid waiver. We discuss each issue, including additional facts as necessary.

## I. The Parsons have a constitutional and statutory right to a jury trial that can be waived.

■

¶ 16. As material to this case, the Wisconsin Constitution, article I, section 5 provides:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but *a jury trial may be waived* by the parties in all cases *in the manner prescribed by law.*

(Emphasis added.) Thus, our constitution, by its plain language, permits the waiver of even a constitutionally guaranteed right to a jury trial in a civil case.

¶ 17. Here, the Parsons allege that the bank, through its employee (Moeser), engaged in criminal racketeering activity in violation of WIS. STAT. § 946.83 by allowing its employee to manipulate the Parsons' loans; the bank essentially allowed its employee to steal the money the Parsons borrowed. WISCONSIN STAT. § 946.87(4) provides civil remedies for victims of racketeering activity, including the right to "demand a trial by jury."[6] Thus, the Parsons have a clear statutory right to a jury trial for their claims.

¶ 18. It is not disputed that under WIS. STAT. § 805.01(2), the Parsons properly asserted their right to a jury trial. *See id.* ("Any party entitled to a trial by jury or by the court may demand a trial in the mode to

---

[6] WISCONSIN STAT. § 946.87(4) provides, as relevant:

Any person who is injured by reason of any violation of s. 946.83 or 946.85 has a cause of action . . . . The defendant or *any* injured person may demand a trial by jury in any civil action brought under this section.

(Emphasis added.)

which entitled at or before the scheduling conference or pretrial conference, whichever is held first. The demand may be made either in writing or orally on the record.").

¶ 19. We will sustain the circuit court's grant of judgment if the circuit court properly exercised its discretion, the facts support its decision, and we find that it applied the correct legal standard. *See Oostburg State Bank v. United Sav. & Loan Ass'n*, 130 Wis. 2d 4, 11–12, 386 N.W.2d 53 (1986). Here, the circuit court ignored the time requirements of Wis. Stat. § 805.01(2) under which the bank had an obligation to assert its now-claimed right to a court trial (*i.e.,* object to the Parsons' jury demand based on the waiver clause) at or before the first scheduling conference. *See* Wis. Stat. § 805.01(2),(3).[7] The circuit court also ignored the fact that the Parsons, by the time the bank raised its jury waiver claim, had been preparing for a jury trial for three years and most likely incurred costs that might have been avoided if the bank had complied with Wisconsin procedure. We conclude that the circuit court erred in its application of § 805.01. We also conclude that the court erroneously exercised its discretion when it ignored the bank's unexplained three-

[7] Wisconsin Stat. § 805.01, titled "Jury trial of right," provides, as relevant:

(2) Demand. Any party entitled to a trial by jury or by the court may demand a trial in the mode to which entitled at or before the scheduling conference or pretrial conference, whichever is held first. The demand may be made either in writing or orally on the record.

(3) Waiver. The failure of a party to demand in accordance with sub. (2) a trial in the mode to which entitled constitutes a waiver of trial in such mode . . . .

126

year delay in its request, the resulting prejudice to the Parsons, and the wasted judicial resources, by changing the mode of trial after years of preparation for a jury.

¶ 20. When the bank acquired State Financial Bank, it acquired not just the Promissory Note, but also the employee who prepared the Note. Nonetheless, the bank did not "demand a trial in the mode to which [it claims it is] entitled" before the first scheduling conference[8] or at any time thereafter. *See* Wis. Stat. § 805.01(2).

¶ 21. A party may forfeit a right by failing to timely assert the right. "Although cases sometimes use the words 'forfeiture' and 'waiver' interchangeably, the two words embody very different legal concepts. 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.' " *State v. Ndina,* 2009 WI 21, ¶ 29, 315 Wis. 2d 653, 761 N.W.2d 612 (citation omitted). Here, the bank ignored its claimed right to a court trial for three years, during which it appeared in court for numerous conferences all moving the case towards trial. At no point during those numerous opportunities did the bank advise the court that the bank believed only a court trial was available to the Parsons. Nor did the bank provide reasons to the circuit court which appear in the record before us that might excuse such an extraordinary

---

[8] Wisconsin Circuit Court Access records indicate the first scheduling conference in this case occurred August 10, 2011, and that jury instructions and verdict form (among other things) were to be prepared by the parties before the pretrial conference, which was set for mid-November 2012.

delay. The passage of three years in litigation, without asserting a claim involving a right as fundamental as the type of trial to be had, we conclude is a forfeiture of the right to belatedly assert that right.

¶ 22. We conclude that when a jury trial was properly demanded under WIS. STAT. § 805.01(2), the three-year delay after litigation began before raising the now-asserted right to a court trial was a forfeiture of any right the bank may have had to a court trial under both its contract and under *Ndina*. In addition, the untimely demand for a court trial (by disputing the Parsons' timely jury demand) is a waiver under WIS. STAT. § 805.01(3) of the right to contest the manner of trial.

¶ 23. Equitable estoppel generally bars one party from taking a position, upon which another party relies, and then subsequently changing that position to the detriment of the relying party. *See Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 2006 WI 67, ¶ 33, 291 Wis. 2d 259, 715 N.W.2d 620 ("There are four elements of equitable estoppel: (1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment."). Here, the bank's failure to challenge the Parsons' jury demand resulted in the Parsons spending three years preparing for a jury trial. The Wisconsin Circuit Court Access record in this case discloses numerous motions, hearings, and other activity that appear to reflect the parties moving toward trial. That the Parsons prepared for a jury trial was reasonable because they had timely demanded a jury and because the bank partici-

pated actively in the pre-trial litigation activities. Participation by the bank, without objection to the mode of trial, is both action (actually participating) and inaction (not objecting to the mode of trial) upon which the Parsons reasonably relied. To change the mode of trial three years into the case is detrimental not only to the Parsons, but also to the reasonable and efficient administration of a court calendar. We conclude that the bank is equitably estopped from making its much belated claim for a court trial.

## II. Prelitigation contractual waiver of a jury trial is prohibited if without actual knowledge.

■

¶ 24. The parties have cited no Wisconsin cases that determine whether the right to a jury trial may be contractually waived prelitigation. Nor have we found such. Other courts, however, have dealt with that issue. *See* Jay M. Zitter, J.D., Annotation, *Contractual jury trial waivers in state civil cases,* 42 A.L.R. 5th 53 (1996). The American Law Reports survey identifies a handful of cases in which prelitigation contractual jury waivers were held unenforceable, *see id.,* § 4, but identifies numerous cases in which the waiver was held enforceable. *See id.,* § 3.

¶ 25. Despite the absence of clear precedent, the bank directs us to a discussion in *Theuerkauf v. Schnellbaecher,* 64 Wis. 2d 79, 87, 218 N.W.2d 295 (1974). We do not find that analysis helpful here. In that case, the defendant, an attorney himself, signed a "notice of trial and certificate of readiness" form at the direction of his counsel—the form identified the trial as a bench trial. *Id.* at 88–89. Not surprisingly, a bench

trial is what he got. *Id.* at 84. Attorneys are presumed to know the law; engineers, like Taft, are not. Schnellbaecher had the advice of counsel; Taft did not. We conclude that the facts in *Schnellbaecher* are so unlike the record before us as to offer no assistance in this case.

¶ 26. The United States District Court for the Northern District of Illinois had occasion to discuss Illinois law in the context of the waiver of a right to a jury trial in a promissory note. In *Whirlpool Financial Corp. v. Sevaux*, 866 F.Supp 1102 (N.D. Ill. 1994), Whirlpool sued Jean Sevaux for nonpayment of a promissory note. *Id.* at 1103. Sevaux asserted affirmative defenses and counterclaims, the gist of which were a variety of fraudulent misrepresentations by Whirlpool. *Id.* at 1104. Sevaux timely requested a jury trial. *Id.* at 1105. Whirlpool moved to dismiss the demand based on the jury waiver. *Id.* at 1105–06. The court held that the constitutional right to a jury trial is waivable, but that "such a waiver must be made knowingly and voluntarily" and that because " 'the right of jury trial is fundamental, courts indulge in every reasonable presumption against waiver.' " *Id.* at 1105 (citation omitted). Relying on Illinois law, the court explained factors which were appropriate to be considered when determining whether a contractual jury waiver was made "knowingly and voluntarily." *Id.* The list provided was not exclusive, but it did include:

> (1) the parties' negotiations concerning the waiver provision, if any, (2) the conspicuousness of the provision, (3) the relative bargaining power of the parties and (4) whether the waiving party's counsel had an opportunity to review the agreement.

*Id.*

¶ 27. When the circuit court dismissed the Parsons' timely jury demand, it relied substantially on *IFC Credit Corp. v. United Business & Industrial Federal Credit Union*, 512 F.3d 989 (7th Cir. 2008), a case involving a forum selection clause that included a bench trial in the selected *federal* forum. The federal court concluded the validity of that contract clause depended on the law of the jurisdiction—there, Illinois—whose rules would govern the rest of the dispute. *Id.* at 991. *IFC Credit* focused on why state law should be applied in the federal courts to resolve disputes involving form contracts between commercial entities. The *IFC Credit* court explained that Illinois law controlled the interpretation and application of the contract, *id.* at 991, and noted that the court had previously held that "the forum-selection clause . . . included in [the] contracts is valid and may be enforced by IFC . . . unless the clause was the result of a distinct fraud." *Id.* In the case before us, the circuit court stated that the *IFC Credit* holding "suggests that the parties' sophistication, whether the contract was procured fraudulently, and whether the jury waiver clause is conspicuous are particularly relevant considerations." However, *IFC Credit* notes that the constitutional status of the right to a jury is so significant that other circuits have concluded that contracts requiring bench trials "are enforceable only if extra evidence of negotiation or consent supports [the] clause." *Id.* at 993.

¶ 28. Our supreme court considered contractual waiver of a statutorily protected right in *Brunton v. Nuvell Credit Corp.*, 2010 WI 50, 325 Wis. 2d 135, 785 N.W.2d 302, where it decided that a party could contractually waive venue in a consumer credit case. *See id.*, ¶ 37. After having participated in the improp-

erly venued action for a considerable period of time, the defendant creditor objected to the venue. *Id.*, ¶¶ 5–6. The court concluded that the burden was on the party claiming waiver to show that the person against whom the waiver is asserted had actual knowledge of the rights being giving up. *Id.*, ¶ 36. The court explained that a valid waiver of the statutory venue right required the party claiming waiver to prove three things: (1) the opposing party had actual knowledge of the place of proper venue; (2) the opposing party had actual knowledge of the right to dismissal of an improperly venued action; and (3) the opposing party intentionally relinquished those rights. *Id.*, ¶¶ 36–37. We consider the court's allocation of the burden of proof and explanation of the elements of proof required for a valid waiver of a statutorily protected right to be binding on this court and the circuit court.

¶ 29. In the case before us, it is abundantly clear that the Parsons have provided facts to support their allegations that the jury waiver clause was fraudulently obtained by the bank. Taft asserts he was given no time to review the documents or to consult with his lawyer about the documents, but was required to sign them immediately if the townhouse project was to go forward. The circuit court, however, surmised that Taft "undoubtedly has experience reviewing paperwork," that "he surely knows the importance of thoroughly reviewing documents," and "it is unlikely that Mr. Parsons overlooked the jury waiver clause." Essentially, the circuit court was surmising facts about Taft's state of mind when he signed the Promissory Note that have no support in the record before us. We conclude, therefore, that there is no factual basis in this record to support the circuit court's discretionary decision to

deprive the Parsons of their properly demanded jury trial three years into this litigation.

¶ 30. The criteria explained by the court in *Whirlpool* are not in conflict with our supreme court's explanation in *Brunton*. Consequently, we refer to both in our analysis. Under *Brunton*, the party seeking to enforce the waiver has the burden of showing that the person against whom the waiver is asserted had actual knowledge of the rights being given up. *See Brunton*, 325 Wis. 2d 135, ¶ 36. Here, the *Brunton* holding would require the bank to show that Taft understood he was giving up his right to a jury, and in what specific circumstances that would occur. The bank has offered no evidence beyond the waiver document itself to show Taft had actual knowledge of the rights being given up. This is an *ipse dixit* method of proof—because the paragraph says the parties "voluntarily, knowingly, irrevocably and unconditionally" waive various stated rights, those facts are true. However, the facts in the record dispute that Taft signed the document containing the waiver knowing the waiver was included, much less that Taft understood the enormous extent and scope of the rights he was giving up.

¶ 31. We consider the factors identified in *Whirlpool* to be reasonable, though not exclusive, measures of whether a waiver was in fact knowingly and voluntarily made. First, was the waiver clause subject to negotiation? *See Whirlpool*, 866 F.Supp at 1105. There is no evidence of any negotiation mentioning the jury waiver. We conclude that the bank has pointed to no evidence in the record which suggests that the waiver clause was even discussed, much less negotiated. Sec-

ond, was the waiver clause conspicuous? *See id.* The clause was entirely in capital letters, although the rest of the Promissory Note, both before and after the waiver clause, was not. The waiver clause appeared on the signature page of the Promissory Note, approximately six inches above the signature line where Taft signed the Note. Third, what was the relative bargaining power of the parties? *See id.* The record contains facts which indicate the bargaining power was significantly unequal at the time these documents were presented to Taft. It is not disputed that when the Promissory Note was signed, no progress had been made on the townhouse project, which was the purpose of the construction loan. Fourth, did Taft have an opportunity to have counsel review the documents containing the waiver? *See id.* The record contains evidence that Taft was not given the opportunity to read all of the documents he was instructed to sign, or to consult with an attorney about the documents. The bank has not provided evidence to the contrary. The bank has relied on the language of the waiver and the fact that Taft has a degree in engineering to support the conclusion that the Parsons "knowingly and voluntarily" waived their right to a jury trial. The bank has failed to meet its burden that the Parsons understood the scope of and the specific nature of the rights given up by the waiver. Summary judgment is reversed and the cause remanded for a jury trial.

### III. Is the "Waiver of Jury Trial" clause unconscionable?

¶ 32. Since the additional question of whether the waiver clause is invalid because it is unconscionable may well arise during trial, as it did at oral

argument, we consider whether the clause, on the record before us, survives an unconscionability analysis.

¶ 33. Whether a contract provision is unconscionable is a question of law we determine independently of the circuit court. *See Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 25, 290 Wis. 2d 514, 714 N.W.2d 155. "Unconscionability has often been described as the absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the other party." *Id.*, ¶ 32. For a contract to be declared invalid as unconscionable, it must be both procedurally and substantively unconscionable. *Id.*, ¶ 29. "A determination of unconscionability requires a mixture of both procedural and substantive unconscionability that is analyzed on a case-by-case basis. The more substantive unconscionability present, the less procedural unconscionability is required, and vice versa." *Id.*, ¶ 33 (footnote omitted).

**a. Procedural Unconscionability.**

¶ 34. Procedural unconscionability requires examining factors that bear upon the formation of the contract, that is, whether there was a " 'real and voluntary meeting of the minds' of the contracting parties." *Id.*, ¶ 34 (citation omitted). When determining whether a contract clause is procedurally unconscionable, we consider multiple factors including, but not limited to: "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were

explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract." *Id.*

¶ 35. Here, Taft's age (maturity), education (training as an engineer), intelligence, and business acumen appear to weigh against procedural unconscionability. However, the relevant procedural context is when Taft signed the Promissory Note with the waiver clause. According to the evidence Taft has presented (the affidavit), when the thirty pages of documents were presented to him, his objections were met with threats from Moeser to pull the construction loan and leave the Parsons with tremendous debt. At that time, Taft's age, education, intelligence, and business acumen made no difference to the situation—Taft received no explanation of any terms in the documents (except oral instructions to insert a specific interest rate); the bank insisted on immediate signing; the bank refused to allow Taft the time and opportunity to read the documents; and the bank refused to allow Taft to consult an attorney about the documents. These facts are not countered by affidavits from the bank providing contrary evidence. Thus, at the time the Promissory Note was signed, we conclude that the facts in the record weigh heavily in favor of the conclusion that the waiver clause is procedurally unconscionable.

## b. Substantive Unconscionability.

¶ 36. "Substantive unconscionability addresses the fairness and reasonableness of the contract provision subject to challenge." *See id.*, ¶ 35. "Substantive

unconscionability refers to whether the terms of a contract are unreasonably favorable to the more powerful party." *Id.*, ¶ 36. While exact symmetry is not required, "the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the [disputed clause] on the weaker party." *Id.*, ¶ 66 n.54 (citation and multiple sets of quotation marks omitted).

¶ 37. The jury waiver clause limits the Parsons' right to a jury trial involving *any* dispute, arising out of *any* document, involving *any* aspect of the relationship between the bank and the Parsons. This waiver literally renders meaningless the Parsons' constitutionally and statutorily protected rights to a civil jury trial involving the bank or those for whose conduct it is responsible, regardless of the nature of the claim or the egregiousness of the misconduct.

¶ 38. By contrast, the bank gave up little or nothing of value by the terms of the waiver. It did not give up lending the Parsons money and collecting interest on the loans. It did not lose the right to foreclose on the Parsons' home, or to call loans, or to enforce its security interests in the Parsons' property. There is no evidence that the bank gave up any right that appears to be a material benefit. Had the bank considered a jury trial a benefit to the bank, it is unlikely this waiver clause would ever have appeared in the bank's form contract. The bank gave up nothing of value to obtain what it must have considered a significant benefit—to be free of ever facing a jury against a dissatisfied borrower. The waiver clause eliminates the Parsons' constitutionally and statutorily protected rights, but simultaneously gives the

bank something it obviously values. A clause or a contract is substantively unconscionable when its terms are unreasonably favorable to the more powerful party. *See id.*, ¶ 36. Accordingly, we conclude that the jury waiver clause is also substantively unconscionable.

¶ 39. Based on the record before us, we conclude that the bank has not carried its burden of producing evidence tending to show that the Parsons knew the extent of the jury trial right included in the waiver, or that the Parsons intentionally relinquished those rights. Additionally, because we conclude that the "Waiver of Jury Trial" clause is both procedurally and substantively unconscionable, the clause is unenforceable. The order vacating the Parsons' timely-invoked demand for a jury trial is reversed. The case is remanded for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.