ANNETTE KINGSLAND ZIEGLER, J.
¶ 1. This is a review of a published decision of the court of appeals, Parsons v. Associated Banc-Corp, 2016 WI App 44, 370 Wis. 2d 112, 881 N.W.2d 793, which reversed the Milwaukee County circuit court's[1] order granting Associated Banc-Corp's ("Associated") motion to strike Taft and Carol Parsons' ("the Parsons") demand for a jury.
¶ 2. The Parsons are approaching a trial in their lawsuit against Associated for alleged racketeering activity and negligent hiring, training, and supervision. We are asked to decide what form that trial will take. The Parsons seek a jury trial, but Associated asserts that the Parsons contractually waived their right to a jury several years ago, before this litigation arose.
f 3. There are two basic issues on this appeal. First, we must examine whether the pre-litigation jury waiver provision in the contract between the Parsons and Associated is enforceable, either with or without proof extrinsic to the terms of the contract that the Parsons knowingly and voluntarily agreed to this *519 waiver. Second, if we conclude that the provision is enforceable, we must examine whether Associated's motion to strike the Parsons' jury demand was untimely.
¶ 4. We conclude that the pre-litigation jury waiver provision in the contract between the Parsons and Associated is enforceable and that Associated does not need to offer additional proof that the Parsons knowingly and voluntarily agreed to this waiver. We further conclude that Associated's motion to strike the Parsons' jury demand was not untimely. Consequently, we reverse the decision of the court of appeals and remand the case to the circuit court for further proceedings consistent with this opinion.
I. FACTUAL AND PROCEDURAL BACKGROUND
¶ 5. In part because of the unusual posture of this case, the facts pertaining to this lawsuit are largely unimportant to the disposition of this appeal. On May 26, 2011, the Parsons sued Associated in Milwaukee County circuit court asserting claims pertaining to, in the words of the Parsons, "a failed construction project in inner-city Milwaukee."
f 6. More specifically, the Parsons' complaint contains the following relevant allegations. In or before 2002, Taft Parsons ("Taft") "conceived of the idea to turn the run-down houses on his block into modern affordable rowhouses." The Parsons obtained financing for this project through State Financial Bank, Associated's predecessor in interest.[2] According to the *520 Parsons, however, Associated "conspired with, aided, and/or allowed the general contractor and project manager [of the project] to improperly take hundreds of thousands of dollars of construction funds from the [Parsons] causing the [Parsons] substantial injury." The complaint asserted ten causes of action and, importantly, demanded a 12-person jury.
¶ 7. On December 12, 2012, the Parsons filed an amended complaint asserting eight causes of action. Before this court, the Parsons contend that they have now "limited their case" to the following two claims presented in their amended complaint: (1) racketeering activity in violation of Wis. Stat. § 946.83(1) (2013-14);[3] and (2) negligent hiring, training, and supervision. In their amended complaint the Parsons again demanded a 12-person jury. On January 9, 2013, the Parsons submitted the jury fee to the circuit court.
¶ 8. On May 14, 2014, Associated filed a motion to strike the Parsons' jury demand. Associated provided the circuit court with a Promissory Note for several hundred thousand dollars dated May 26, 2004. and listing Taft as "Borrower" and Associated as "Lender." The note contained the following relevant language:
WAIVER OF JURY TRIAL. THE BORROWER AND THE LENDER (BY THEIR ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE BORROWER AND THE LENDER ARISING OUT OF OR IN ANY WAY RE *521 LATED TO THIS DOCUMENT, ANY OTHER RELATED DOCUMENT, OR ANY RELATIONSHIP BETWEEN THE BORROWER AND THE LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT TO THE LENDER TO PROVIDE THE FINANCING DESCRIBED HEREIN OR IN OTHER LOAN DOCUMENTS.
[[Image here]]
PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE .... BORROWER AGREES TO THE TERMS OF THE NOTE.
(Boldface omitted from first four words and last paragraph.) A few lines below this text was Taft's signature. Accordingly, Associated asked the court to strike the Parsons' jury demand "because it was contractually waived."
¶ 9. The Parsons offered a number of arguments in response to the motion to strike; the following ones are relevant to this appeal. First, while conceding that "the statutes do not provide a deadline for an opposing party to object to a jury demand," the Parsons argued that Associated's motion to strike was untimely and that Associated had waived its right to object to the jury demand. Second, the Parsons claimed that because of the lack of Wisconsin case law regarding contractual jury waivers, the circuit court was not required to enforce the jury waiver provided by Associated. Third, the Parsons contended that Carol Parsons ("Carol") had not signed the Promissory Note and thus had not waived her right to a jury. Finally, the Parsons asserted that Taft "had no freedom not to sign the Promissory Note for the construction loan."
f 10. With regard to this final argument, the Parsons attached an affidavit in which Taft swore to *522 the following, among other things: Taft "never noticed any jury waiver clause in the Promissory Note . . . because [he] was not given time to review the loan documents prior to the closing"; Taft "had no counsel" at the time he signed the Promissory Note; Taft was told "that if [he] did not sign the closing documents immediately, [Associated] would withdraw its support for the construction project"; if Taft "had not gotten the construction loan," tens of thousands of dollars he had already obtained under another loan "for pre-construction costs would have been down the drain, and [he] would still have owed that money"; Taft "did not knowingly and freely waive any right to a jury trial"; and Taft signed the Promissory Note "under pressure."
¶ 11. On October 24, 2014, the circuit court granted Associated's motion to strike the Parsons' jury demand. Citing as "particularly relevant considerations" "the parties' sophistication, whether the contract was procured fraudulently, and whether the jury waiver clause is conspicuous," the circuit court concluded that the waiver was enforceable. The circuit court explained in part:
[Taft] is an intelligent business man who undoubtedly has experience reviewing paperwork and entering into contracts; he surely knows the importance of thoroughly reviewing documents... . [T]he promissory note also contained multiple bold, capital letter ac-knowledgements above the signature line. The jury waiver clause is set off from the rest of the document by bold, capital letters, stating "WAIVER OF THE JURY TRIAL." [sic] It is unlikely that [Taft] overlooked the jury waiver clause as the promissory note itself is just a two-page document. Finally, Wisconsin courts presume that a party to a contract had knowledge of it and consented to its terms.
*523 f 12. The circuit court rejected the Parsons' timeliness argument in part because the Parsons had not provided any law establishing that Associated's putative delay in objecting to the jury demand waived Associated's right to object to the demand. With regard to the Parsons’ claim that Carol was not hound by the jury waiver, the court concluded:
The argument made in the Parsons' brief. .. was superficial. Regardless, the jury waiver applies to "any dispute . . . between or among the Borrower and the Lender arising out of' the promissory note[,] any other related document, or "any relationship between the Borrower and the Lender." As [Carol]'s claims are ones arising out of the relationship between the borrower and the Bank, the waiver clause also applies to her.
The circuit court ordered that the Parsons' cause would be heard by court trial.
¶ 13. On November 25, 2014, the Parsons petitioned the court of appeals for leave to appeal a non-final order. On December 12, 2014, the court of appeals granted the petition. On May 20, 2016, in a published opinion, the court of appeals reversed the decision of the circuit court and remanded the case for a jury trial. Parsons, 370 Wis. 2d 112, ¶ 1.
¶ 14. The court of appeals began with the broad proposition that a person may waive his or her right to a jury trial under Article I, section 5 of the Wisconsin Constitution. Id., ¶ 16. However, the court of appeals concluded that Associated bore the burden of demonstrating that the Parsons "understood the scope of and the specific nature of the rights given up by the waiver." Id., f 31. Relying on Taft's affidavit, the court determined that Associated had not met that burden and that the circuit court erred in concluding otherwise. See id., ¶¶ 29-31.
*524 ¶ 15. The court of appeals then explained that because "the additional question of whether the waiver clause is invalid because it is unconscionable may well arise during trial, as it did at oral argument, [it would] consider whether the clause, on the record before [it], survives an unconscionability analysis." Id., ¶ 32. The court of appeals concluded the waiver was procedurally and substantively unconscionable. Id., ¶ 39.
f 16. The court of appeals also considered whether the circuit court erred in allowing Associated to object to the Parsons' jury demand and concluded it had erred for three reasons. First, Associated had forfeited its right to object because its objection was not timely. Id., ¶ 22. Second, Associated had waived its right to object under Wis. Stat. § 805.01(3). Id. Third, Associated was "equitably estopped from making its much belated claim for a court trial." Id., ¶ 23. The court of appeals remanded the case for a jury trial. Id., I 1.
f 17. On June 9, 2016, Associated filed a petition for review in this court. On September 13, 2016, we granted the petition.
II. STANDARD OF REVIEW
¶ 18. In this case we interpret Article I, section 5 of the Wisconsin Constitution. We review state constitutional questions de novo. State v. Lagrone, 2016 WI 26, ¶ 18, 368 Wis. 2d 1, 878 N.W.2d 636 (quoting State v. Schaefer, 2008 WI 25, ¶ 17, 308 Wis. 2d 279, 746 N.W.2d 457).
¶ 19. We also interpret and apply Wis. Stat. § 805.01 ("Jury trial of right."). " 'Statutory interpretation and application present questions of law that we *525 review de novo while benefiting from the analyses of the court of appeals and circuit court.' " Journal Times v. Racine Bd. Police & Fire Comm'rs, 2015 WI 56, ¶ 42, 362 Wis. 2d 577, 866 N.W.2d 563 (quoting 118th St. Kenosha, LLC v. DOT, 2014 WI 125, ¶ 19, 359 Wis. 2d 30, 856 N.W.2d 486).
III. ANALYSIS
¶ 20. We first address whether the pre-litigation jury waiver provision in the contract between the Parsons and Associated is enforceable. We then address whether Associated's motion to strike the Parsons' jury demand is untimely.
A. Whether the Pre-litigation Jury Waiver Provision in the Contract between the Parsons and Associated is Enforceable
f 21. That a person may waive his or her right to a civil jury trial in Wisconsin is already settled law. Under Article I, section 5 of the Wisconsin Constitution:
The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than fivesixths thereof.
Wis. Const. art. I, § 5 (emphasis added).
¶ 22. The Wisconsin Statutes set forth a number of ways in which a civil jury trial may be waived. For example, under Wis. Stat. § 805.01(2), "Any party *526 entitled to a trial by jury or by the court may demand a trial in the mode to which entitled at or before the scheduling conference or pretrial conference, whichever is held first. The demand may be made either in writing or orally on the record." § 805.01(2). However,
[t]he failure of a party to demand in accordance with sub. (2) a trial in the mode to which entitled constitutes a waiver of trial in such mode. The right to trial by jury is also waived if the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury.
§ 805.01(3). Further, under Wis. Stat. § 814.61(4), "If the jury fee is not paid, no jury may be called in the action, and the action may be tried to the court without a jury." § 814.61(4). See generally Rao v. WMA Sec., Inc., 2008 WI 73, ¶¶ 19-20, 310 Wis. 2d 623, 752 N.W.2d 220 (discussing the same statutes); Phelps v. Physicians Ins. Co. of Wis., 2005 WI 85, ¶¶ 28-29, 282 Wis. 2d 69, 698 N.W.2d 643 (same). "Wisconsin Stat. §§ 805.01(3) and 814.61 are but two examples of how waiver may be effectuated." Phelps, 282 Wis. 2d 69, ¶ 28.
¶ 23. The central question in this case, therefore, is not whether a civil jury trial may be waived, but instead whether a pre-litigation jury waiver provision in a contract constitutes waiver "in the manner prescribed by law." Wis. Const. art. I, § 5.
¶ 24. We observe that the parties have not presented us with a statute governing contractual jury waivers. However, as we will now explain, that is not dispositive of the issue. It is true that in another context—interpretation of the "powers, duties and compensation" of the attorney general pursuant to Ar- *527 tide VI, section 3 of the Wisconsin Constitution—this court has interpreted the word "law" in the phrase "prescribed by law" to mean statutory law. See, e.g., State v. City of Oak Creek, 2000 WI 9, ¶ 19, 232 Wis. 2d 612, 605 N.W.2d 526. And "[u]ndoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." Atl. Cleaners & Dyers v. United States, 286 U.S. 427, 433 (1932). Yet this presumption "is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." Id. Here, a number of considerations lead us to conclude that the phrase "prescribed by law" in Article I, section 5 of the Wisconsin Constitution is not restricted to statutory law.
¶ 25. As a preliminary matter, we note the obvious proposition that the phrase "prescribed by law" is susceptible to a broader definition than simply "prescribed by statute." The word "law" can denote "[t]he aggregate of legislation, judicial precedents, and accepted legal principles," not just legislation. Law, Black's Law Dictionary 1015 (10th ed. 2014). Likewise, to "prescribe" simply means "[t]o dictate, ordain, or direct; to establish authoritatively (as a rule or guideline)." Prescribe, id. at 1373.[4]
*528 ¶ 26. Next, we must acknowledge a second, related interpretative presumption, namely the intuitive presumption that "different words have different meanings." Pawlowski v. Am. Family Mut. Ins. Co., 2009 WI 105, ¶ 22, 322 Wis. 2d 21, 777 N.W.2d 67 ("When the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings."); Antonin Scalia & Bryan A. Garner, Reading Law 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning."). While Article I, section 5 of the Wisconsin Constitution provides that "a jury trial may be waived by the parties in all cases in the manner prescribed by law," that sentence is immediately followed by this sentence: "Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than fivesixths thereof." Wis. Const, art. I, § 5 (emphases added). The fact that the same section in the state constitution refers generally *529 to a matter being "prescribed by law" and specifically to the legislature "provid [ing]" something "by statute" strongly suggests that "law" in that section has a broader meaning than simply "statutory law."
¶ 27. We turn now to a significant factor in our analysis: this is not the first time this court has addressed the question of whether the manner of jury waiver under Article I, section 5 of the Wisconsin Constitution must find prior authorization in a statute. In interpreting the meaning of "prescribed by law" in the attorney general section of our constitution in City of Oak Creek, we declared that "this court has consistently stated that the phrase 'prescribed by law' in art. VI, § 3 plainly means prescribed by statutory law." City of Oak Creek, 232 Wis. 2d 612, ¶ 19. But just the opposite is true with regard to Article I, section 5: as made clear by our decision in Theuerkauf v. Schnellbaecher, 64 Wis. 2d 79, 218 N.W.2d 295 (1974), a long line of early cases of this court determined, without any reference to an authorizing statute, that a jury trial had been waived. See Theuerkauf, 64 Wis. 2d at 87 (citing Leonard v. Rogan, 20 Wis. 568 (*540), 571 (*543) (1866); Charles Baumbach Co. v. Hobkirk, 104 Wis. 488, 80 N.W. 740 (1899); McCormick v. Ketchum, 48 Wis. 643, 4 N.W. 798 (1880); Wooster v. Weyh, 194 Wis. 85, 216 N.W. 134 (1927); Gifford v. Thur, 226 Wis. 630, 276 N.W. 348 (1938)).
¶ 28. Thus this court announced in Theuerkauf: "[T]he conclusion has been reached that [Wis. Stat. §] 270.32"—the predecessor to the current Wis. Stat. § 805.01[5]—"does not state the exclusive conditions for finding waiver of jury trial." Theuerkauf, 64 Wis. 2d at *530 87. In referring, after stating this proposition, to cases where no statute at all was cited in discussions of jury waiver, the Theuerkauf court was plainly implying not that conditions for finding waiver of a jury trial could be found in other statutes, but that some such conditions had their source independent of any statute enacted by the legislature. This proposition was hinted at later in Rao, where we looked to "court-promulgated rule[s] of pleading, practice, or procedure" as well as "case law interpreting and applying these rules" to determine "the manner by which a party waives its Article I, Section 5 right of trial by jury." Rao, 310 Wis. 2d 623, ¶¶ 35 n.25, 45 (citing Phelps, 282 Wis. 2d 69, ¶ 28).[6]
¶ 29. It makes sense to interpret Article I, section 5 in this fashion given the often broad definition of the term "waiver." See, e.g., Rao, 310 Wis. 2d 623, ¶ 22 (quoting State v. Kelty, 2006 WI 101, ¶ 18 n.11, 294 Wis. 2d 62, 716 N.W.2d 886) ("[A] party's 'waiver' of the Article I, Section 5 right of trial by jury need not be a 'waiver' in the strictest sense of that word, that is, an 'intentional relinquishment of a known right.' "); Wil- *531 liara R. Anson, Principles of the Law of Contract 419 (Arthur L. Corbin ed., 3d Am. ed. 1919), quoted in Black's, supra ¶ 25, at 1813 ("The term waiver is one of those words of indefinite connotation in which our legal literature abounds; like a cloak, it covers a multitude of sins."). Interpreting "prescribed by law" to mean "prescribed by the legislature" assigns to the legislature the task of defining all the possible ways a person might waive his or her right to a jury trial. Interpreting the phrase to, for example, encompass the common law, allows the legislature to enumerate additional, specific manners of waiver, or to preclude particular manners of waiver if it so desires. This latter is the more reasonable interpretation, and thus the likelier one.
¶ 30. For all of these reasons, we conclude that the text of Article I, section 5 of the Wisconsin Constitution does not limit the manner of jury trial waiver to those set forth by statute. Consequently, we may look to other sources of law to determine whether the Parsons' putative waiver of their right to a jury trial was valid. This particular case may be resolved by turning to common law—specifically, to longstanding principles of contract law in Wisconsin.
¶ 31. "Wisconsin public policy favors freedom of contract." Solowicz v. Forward Geneva Nat'l, LLC, 2010 WI 20, ¶ 34, 323 Wis. 2d 556, 780 N.W.2d 111 (citing AKG Real Estate, LLC v. Kosterman, 2006 WI 106, ¶ 34, 296 Wis. 2d 1, 717 N.W.2d 835); see also Watts v. Watts, 137 Wis. 2d 506, 521, 405 N.W.2d 303 (1987) ("Wisconsin courts have long recognized the importance of freedom of contract and have endeavored to protect the right to contract."). "[F]reedom of *532 contract rests on the premise that it is in the public interest to accord individuals broad powers to order their affairs through legally enforceable agreements." Ash Park, LLC v. Alexander & Bishop, Ltd., 2015 WI 65, ¶ 38 n.24, 363 Wis. 2d 699, 866 N.W.2d 679 (alteration in original) (quoting E. Allan Farnsworth, 2 Farnsworth on Contracts § 5.1, at 1 (3rd ed. 2004)). That is, "individuals should have the power to govern their own affairs without governmental interference." Merten v. Nathan, 108 Wis. 2d 205, 211, 321 N.W.2d 173 (1982).
f 32. There is no reason why waiver of a person's Article I, section 5 right to a jury trial should constitute an exception to our general presumption in favor of freedom of contract. "It is well settled that constitutional rights . . . may be waived." Booth Fisheries Co. v. Indus. Comm'n, 185 Wis. 127, 132, 200 N.W. 775 (1924), aff'd, 271 U.S. 208 (1926). Moreover, the action a party must take to waive his or her Article I, section 5 right to a jury trial pursuant to statute is quite minimal. For example, as explained above, a jury may be waived simply by failure to pay the required fee. Wis. Stat. § 814.61(4). Compared to a potentially accidental waiver like that, there is nothing inherently unjust about allowing parties to agree voluntarily to forego a jury in advance of trial.
¶ 33. In fact, the legislature has indicated agreement with this conclusion. Wisconsin Stat. ch. 218 ("Finance Companies, Auto Dealers, Adjustment Companies and Collection Agencies") contains a provision which states that "[ejxcept as provided [elsewhere], provisions of an agreement which do any of the following are void and prohibited: . . . waive the dealer's or distributor's right to a jury trial." Wis. Stat. *533 § 218.0114(9)(a)2. The chapter defines "agreement" to mean "a contract that describes the franchise relationship between manufacturers, distributors, importers and dealers." Wis. Stat. § 218.0101(1) (emphasis added). In other words, the legislature has, in a very narrow context, prohibited contractual jury waivers. It would be strange for the legislature to foreclose such waivers under these limited circumstances if it thought contractual jury waivers were prohibited in general due to a lack of express statutory authorization.[7]
¶ 34. Accordingly, we conclude that, consistent with longstanding principles of contract law in Wisconsin, the pre-litigation jury waiver provision in the contract between the Parsons and Associated is enforceable.
¶ 35. As explained, the court of appeals concluded that Associated bore the additional burden of demonstrating that the Parsons "understood the scope of and the specific nature of the rights given up by the waiver." Parsons, 370 Wis. 2d 112, ¶ 31. We disagree. First of all, as is apparent from our previous discussion, "a party's 'waiver' of the Article I, Section 5 right of trial by jury need not be a 'waiver' in the strictest sense of that word, that is, an 'intentional relinquishment of a known right.' " Rao, 310 Wis. 2d 623, ¶ 22 (quoting Kelty, 294 Wis. 2d 62, ¶ 18 n.11).
¶ 36. Second, in Wisconsin, "[w]here the terms of a contract are clear and unambiguous, we construe the *534 contract according to its literal terms. 'We presume the parties' intent is evidenced by the words they [choose], if those words are unambiguous.'" Tufail v. Midwest Hosp., LLC, 2013 WI 62, ¶ 26, 348 Wis. 2d 631, 833 N.W.2d 686 (citation omitted) (quoting Kernz v. J. L. French Corp., 2003 WI App 140, ¶ 9, 266 Wis. 2d 124, 667 N.W.2d 751). While "the presumption is not conclusive in all cases," "[i]t is a familiar rule that those who sign written instruments are presumed to know their contents and their legal effect." Creasey Corp. v. Dunning, 182 Wis. 388, 396, 196 N.W. 775 (1924). "Men, in their dealings with each other, cannot close their eyes to the means of knowledge equally accessible to themselves and those with whom they deal, and then ask courts to relieve them from the consequences of their lack of vigilance." Kruse v. Koelzer, 124 Wis. 536, 541, 102 N.W. 1072 (1905).
¶ 37. The words of the Parsons' contract are unambiguous. By those words, both Associated and the Parsons waived any right to a jury trial. Further, the contract provides, in boldface, that "PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE." "It is not the function of the court to relieve a party to a freely negotiated contract of the burdens of a provision which becomes more onerous than had originally been anticipated." Ash Park, LLC, 363 Wis. 2d 699, ¶ 38 (quoting 11 Richard A. Lord, Williston on Contracts §1:1 (4th ed. 2002)). We conclude that Associated does not need to offer additional proof that the Parsons knowingly and voluntarily agreed to this waiver.
¶ 38. Before proceeding, we address Taft's affidavit. Relying on the affidavit, the court of appeals *535 suggested that Associated had obtained the jury-waiver provision fraudulently. However, "a party seeking to invalidate a provision in a contract. . . has the burden of proving facts that justify a court's reaching the legal conclusion that the provision is invalid." Wisconsin Auto Title Loans, Inc. v. Jones, 2006 WI 53, ¶ 30, 290 Wis. 2d 514, 714 N.W.2d 155. The circuit court was "unpersuaded" by the allegations in Taft's affidavit and apparently found them to be incredible, relying in part on its view of Taft's business acumen and the specific characteristics of the waiver itself. The record adequately supports the circuit court's determination, and thus the court of appeals was not entitled to substitute its own view of the evidence for the circuit court's view of the evidence. See, e.g., Lemke v. Lemke, 2012 WI App 96, ¶ 55, 343 Wis. 2d 748, 820 N.W.2d 470 ("[A]n appellate court does not find facts."); State v. Turner, 136 Wis. 2d 333, 343, 401 N.W.2d 827 (1987) ("In general, we are bound not to upset the trial court's findings of historical or evidentiary fact unless they are contrary to the great weight and clear preponderance of the evidence."); Klein-Dickert Oshkosh, Inc. v. Frontier Mortg. Corp., 93 Wis. 2d 660, 663, 287 N.W.2d 742 (1980) ("[W]hen the trial judge acts as the finder of fact, he is the ultimate and final arbiter of the credibility of witnesses. When more than one inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact.").
f 39. The court of appeals did not stop there, additionally concluding that the clause was substantively and procedurally unconscionable. Parsons, 370 Wis. 2d 112, ¶¶ 32-39. The court of appeals explained that it was addressing this question because it "may *536 well arise during trial, as it did at oral argument." Id,., ¶ 32. Given the posture of the case, the findings of the circuit court regarding the affidavit, and the skeletal state of the record, the decision of the court of appeals to reach out and opine on unconscionability was erroneous. The conclusion of the court of appeals that the Parsons' contractual jury waiver is unconscionable is reversed. The circuit court may decide on remand whether (and if so, when) unconscionability may be addressed.[8]
B. Whether Associated's Motion is Untimely
1 40. We have concluded that that the pre-litigation jury waiver provision in the contract between the Parsons and Associated is enforceable. But the Parsons counter Associated's waiver claim with a "waiver" claim of their own: they claim that Associated waited too long to object to the Parsons' jury demand and thus may not now do so. The circuit court below *537 rejected this claim in part because the Parsons had not provided law supporting it. The court of appeals reversed this conclusion, stating that Associated had forfeited the right to strike the Parsons' jury demand, had waived the right under Wis. Stat. § 805.01(3), and were equitably estopped from asserting the right. Parsons, 370 Wis. 2d 112, ¶¶ 21-23. We disagree with all three determinations.
¶ 41. The only statutory authority provided in this case is Wis. Stat. § 805.01, which states in relevant part:
(1) Right Preserved. The right of trial by jury as declared in article I, section 5, of the constitution or as given by a statute and the right of trial by the court shall be preserved to the parties inviolate.
(2) Demand. Any party entitled to a trial by jury or by the court may demand a trial in the mode to which entitled at or before the scheduling conference or pretrial conference, whichever is held first. The demand may be made either in writing or orally on the record.
(3) Waiver. The failure of a party to demand in accordance with sub. (2) a trial in the mode to which entitled constitutes a waiver of trial in such mode.
§ 805.01(l)-(3) (emphases added). The court of appeals concluded Associated was bound by the emphasized text because Associated viewed itself as "entitled to a trial... by the court." See Parsons, 370 Wis. 2d 112, ¶ 22. One problem with the reasoning of the court of appeals is that, pursuant to it, both Associated and the Parsons could waive any entitlement to a mode of trial and the mode of trial would remain undetermined. In any event, Associated was not, in fact, "demanding] a trial in the mode to which entitled." It was instead *538 moving to strike the Parsons'jury demand because the Parsons were not themselves "entitled to a trial by jury." These are not identical actions. See Judicial Council Committee Note, 1974, to Wis. Stat. § 805.01, S. Ct. Order, Rules of Civil Procedure, 67 Wis. 2d at 690 ("The reference to trial by the court is included because Wisconsin, unlike most states, has long recognized a constitutional right to trial by the court in appropriate cases." (citing Callanan v. Judd, 23 Wis. 343 (1868)).
¶ 42. The parties devote a significant amount of briefing to establishing with precision the timeline below and whether Associated's putative delay was reasonable in light of various events that occurred as litigation proceeded. In the absence of a statutory directive, we cannot conclude that the circuit court— the entity with the best grasp of the unfolding of the proceedings below and of the relative equities of the situation—erroneously exercised its discretion in allowing Associated to rely on its otherwise-enforceable agreement with the Parsons not to try this case before a jury. C.f., e.g., Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 220, 226-27 (3d Cir. 2007) (reviewing district court's decision not to "bar[] DaimlerChrysler's motion to strike Tracinda's jury demand on the basis of laches" after DaimlerChrysler waited three years to file the motion under abuse-of-discretion standard). Further, having contracted away their right, any reliance that the Parsons might have had on Associated's initial acquiescence in their unfounded demand for a jury trial was not reasonable. Because reasonable reliance is a requirement of equitable estoppel, Associated is not equitably estopped from striking the Parsons' demand. See Affordable Erecting, Inc. v. Neo *539 sho Trompler, Inc., 2006 WI 67, ¶ 33, 291 Wis. 2d 269, 715 N.W.2d 620 ("There are four elements of equitable estoppel: (1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment." (emphasis added) (citing Village of Hobart v. Brown Cnty., 2005 WI 78, ¶ 36, 281 Wis. 2d 628, 698 N.W.2d 83)).
f 43. In sum, Associated's motion to strike the Parsons' jury demand was not untimely.
¶ 44. Before we conclude, we stress that the Parsons are not being denied their day in court. We simply decide today that any trial that occurs on remand will be a bench trial. We add that the circuit court may determine, as this litigation proceeds, whether the Parsons may bring additional arguments related to the validity of any agreements into which they entered with Associated.
IV. CONCLUSION
¶ 45. We conclude that the pre-litigation jury waiver provision in the contract between the Parsons and Associated is enforceable and that Associated does not need to offer additional proof that the Parsons knowingly and voluntarily agreed to this waiver. We further conclude that Associated's motion to strike the Parsons'jury demand was not untimely. Consequently, we reverse the decision of the court of appeals and remand the case to the circuit court for further proceedings consistent with this opinion.
By the Court.—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.
*540 ¶ 46. DANIEL KELLY, J., did not participate.

 The Honorable Jeffrey A. Conen presided.

 For simplicity, we will refer to both State Financial Bank and Associated as "Associated" for the remainder of this opinion. We express no position on the merits of the underlying dispute.

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 The phrase "prescribed by law" appeared in the original version of Article I, section 5 of the Wisconsin Constitution adopted in 1848. Both "law" and "prescribe" carried similar definitions during that time period. One legal dictionary of the time defines "law" in part as follows:
[T]hat body or system of rules which the government of a country has established for its internal regulation, and for ascertaining and defining the rights and duties of the governed, . . . commonly called municipal or civil law, and, in popular language, "the law *528 of the land." The municipal law of England is composed of written and unwritten laws (lex scripta and lex non scripta): or, in other words, of the statutes of the realm, and of the custom of the realm, otherwise termed the "common law[";] on both of which branches of the law the superior courts exercise their judgment, giving construction and effect to the former, and by their interpretation declaring what is, and what is not the latter.
Henry James Holthouse, A New Law Dictionary 245 (2d ed., Boston, Charles C. Little and James Brown, London, Thomas Blenkarn 1850). Another contemporaneous dictionary defines "prescribe" in part as "[t]o set or lay down authoritatively for direction; to give as a rule of conduct. To direct." 2 John Boag, A Popular and Complete English Dictionary 1016 (Glasgow, William Collins 1848).

 See Sup. Ct. Order, Rules of Civil Procedure, 67 Wis. 2d 585, 585-86, 689-90, 760 (1975).

 That is not to say that our case law has been wholly consistent. In Bennett v. State, a criminal case, this court noted in passing that:
Under [Article I, section 5 of the Wisconsin Constitution], this court has repeatedly held that a party to an action may waive the right of trial by jury, not only in the manner prescribed by law, but by not taking exceptions on the trial of an action without a jury, the right to which is secured to him by this section.
Bennett v. State, 57 Wis. 69, 74, 14 N.W. 912 (1883). For the reasons provided in this opinion, we conclude that the proper inquiry under Article I, section 5, is to examine whether a particular form of jury waiver not particularly described in a statute is nevertheless "prescribed by law" other than statutory law, rather than to anchor that form to some (unexplained) basis independent of the constitutional text, as Bennett appears to have done.

 Nor was the legislature simply considering arbitration agreements; Wisconsin Stat. § 218.0114(9)(b)l. explains that ''[n]otwithstanding par. (a)2." and subject to certain conditions, "an agreement may provide for the resolution of disputes by arbitration, including binding arbitration." § 218.0114(9)(b)l.

 The Parsons argued before the circuit court that Carol was not bound by the jury waiver signed by Taft. The circuit court rejected that argument, characterizing it as "superficial." Despite this warning, the Parsons' argument on this issue before this court is a single paragraph long and does not cite to any legal authorities. "[W]e do not usually address undeveloped arguments," and we will not do so here. State v. Gracia, 2013 WI 15, ¶ 29 n.13, 345 Wis. 2d 488, 826 N.W.2d 87.
Additionally, the parties do not develop arguments that we should analyze waiver of any statutory right to a jury trial the Parsons possess differently from how we analyze waiver of their constitutional right to a jury trial, so we do not do so. See Wis. Stat. § 805.01(1) ("The right of trial by jury as declared in article I, section 5, of the constitution or as given by a statute and the right of trial by the court shall be preserved to the parties inviolate.").